W. L. Clapp *et al. v.* Knox County, Tennessee, *et al.*

(*Knoxville,* September Term, 1954.)

Opinion filed December 16, 1954.

PRIVETTE & MORTON, of Knoxville, for appellants.

R. C. SMITH, JR., ELY & ELY, and CHARLES S. BADGETT, all of Knoxville, for appellees.

MR. CHIEF JUSTICE NEIL delivered the opinion of the Court.

The sole issue on this appeal involves the construction of the County Zoning Act and the proceedings thereunder by the Quarterly County Court of Knox County, Tennessee.

The appellants are challenging certain acts of the Quarterly County Court of Knox County in re-zoning certain lands of one Roy C. Brown, trustee, and located just outside of the City of Knoxville on the four-lane highway leading from Knoxville into the Great Smoky Mountains.

The questions raised by the appellants are important to the particular individuals involved herein as well as to others residing in other counties in the State. Insofar as we have been able to find this is the first time that this Court has had this Act under consideration. The Zoning Act applies to all counties in the State. It was first enacted by the Legislature and appears as Chapter 33 of the Public Acts of 1935. Certain sections of this Act have been subsequently amended by the Legislature. Codifiers of the 1932 Code attached the Act and its various sections to Code Section 10268, which is the last section in the Code specifying the jurisdiction of the County Court. The various sections of the Zoning Act as thus carried into the 1932 Code are Sections 10268.1 through 10268.17.

Pursuant to this Act the Quarterly Court of Knox County in May, 1941, as amended in June, 1950, adopted a resolution establishing Zoning Districts within the unincorporated territory of Knox County by a formal resolution. Since that time Knox County has had Zoning Regulations and a Planning Commission with offices and maps, etc., setting out the various Districts and what they comprise. Under this Resolution establishing Knox County Zoning Regulations, and under Section 3 spe-

cifically thereof, it provides for the creation of zones in Knox County. Section 3A1 says:

"The boundaries of the aforesaid zones are hereby established upon the map which is designated as the 'Zoning Map of Knox County, Tennessee,' and is on file in the office of the Knox County Planning Commission. Said Zoning Map of Knox County, Tennessee, consisting of a chart explaining symbols and indications which appear on said map, is hereby made a part of this resolution."

In conformity with this provision the Planning Commission of Knox County posted this large map in their office. This official map is there and by use of color symbols denotes the different zones under the Zoning Plan.

By Section 3B1, no buildings or premises may be used "for any purpose other than a use permitted by this resolution in the zone in which such building or premises is located." The zoning plan of Knox County is based upon the use of this official "zoning map" which establishes boundaries of various zones on the map itself, and regulates the use of buildings or premises within these zones.

This is important in the present lawsuit because the basic resolution by word description of boundaries is not used but to the contrary by use of the zoning map and charts and symbols is the way these things are designated and pointed out. These symbols used by the Planning Commission are primarily the use of different colors and denote different zones. Whenever any zoned property is amended by the Quarterly County Court the official zoning map is changed to the color contained in the amending resolution.

These amending resolutions of the zoning plan are not made by altering the language of the basic resolution itself because the various zones of Knox County are established by use of this zoning map rather than by written language in the basic resolution.

The Knox County Planning Commission has established certain forms of regulations so as to conduct that Commission on a businesslike basis. Among the other forms adopted is one styled "Petition for Rezoning". This petition then is addressed to the Planning Commission and then follows certain language with various blanks to be interlined by the one desiring a rezoning. In this blank is the class property from which and to which the rezoning is asked and then in addition to that there is a brief description of the property given along with the addresses below of the people who live or own property within a radius of 1,000 feet of the proposed change. Obviously since such forms have been created the Commission naturally, since it is young, expects a great many petitions for rezoning the various properties in the County. The petition in the instant case was filed on one of these forms on October 9, 1953. The secretary of the Planning Commission indicated that this petition was not full enough or was not sufficient and as a result the appellees herein filed a subsequent petition at a later date which apparently did meet the requirements of the Planning Commission.

This amended petition then came on to be heard before the Planning Commission at two separate times and at the last hearing the minutes of the Planning Commission, which are in the record, show that there were some 75 or more people present. After the matter was fully heard before the Planning Commission that Commission had a tie vote on whether the rezoning should be granted or not.

Then it was that the matter was taken before the Quarterly County Court. It is the method in which the matter was taken before the Quarterly County Court and the action thereon that bring this matter before this Court.

Before we go into these questions the matter got into court through a petition for certiorari by the appellants to the Chancellor to bring the action of the Quarterly County Court in rezoning this property before that court. To the petition for certiorari the appellees filed a motion to dismiss coupled with an answer. The Chancellor sustained this motion to dismiss and the present appeal has resulted.

In other words, the Chancellor held that the proceedings concerning the property in question "were regular and lawful and not arbitrary nor unreasonable".

The first section of the statute governing county zoning is: "The quarterly county court of any county is hereby empowered, in accordance with the conditions and the procedure specified in the subsequent sections of this act, to regulate, in the portions of such county which lie outside of municipal corporations, the location, height and size of buildings and other structures, the percentage of lot which may be occupied, the sizes of yards, courts and other open spaces, the density and distribution of population, the uses of buildings and structures for trade, industry, residence, recreation or other purposes, and the uses of land for trade, industry, residence, recreation, agriculture, forestry, soil conservation, water-supply conservation or other purposes." 1932 Code, Section 10268.1, as amended.

The principal Code Section which is under consideration in the instant case is Section 5 of the Act, or Code Section 10268.5, and is: "*Amendments.*—The county

court may from time to time amend the number, shape, boundary, area or any regulation of or within any district or districts or any other provision of any zoning ordinance; but any such amendment shall not be made or become effective unless the same be first submitted for approval, disapproval, or suggestions to the regional planning commission of the region in which the territory covered by the ordinance is located, and, if such regional planning commission disapproves within thirty (30) days after such submission, such amendment shall require the favorable vote of a majority of the entire membership of the county court. *Before finally adopting any such amendment, the county court shall hold a public hearing thereon, at least thirty (30) days' notice of the time and place of which shall be given by at least one publication in a newspaper of general circulation in the county; and any such amendment shall be published at least once in the official newspaper of the county or in a newspaper of general circulation in the county.*" (Italics ours.) ·

It will be observed by reading the statute, Chapter 33 of the Public Acts of 1935, that all through these various sections of this Act the Legislators provided that the counties "may, by ordinance" exercise the various powers under the Act. The Act though does not use the word "shall", but it "may, by ordinance" do these things. The County Court of Knox County has consistently, since they attempted to come under the Act, done what they have done by "resolution" rather than by ordinance. We heretofore outlined the fact that by a formal resolution the county had decided to come under this Act and zone the county in 1941 as subsequently amended. The question of whether or not the acts taken in the instant case by formal motion is sufficient compliance of the Act has been very ably raised here. Another variation in word from the

statute, Chapter 33, Public Acts of 1935, has been followed by Knox County and was followed in the instant case. Instead of calling these proposed changes in the zoning of property an amendment, they are called and referred to as a petition rather than an amendment. In other words it seems to have been the practice of the Planning Commission that the petition, a form of which they have sent out for a change, is so brief and well stated that it operates as an amendment of the zoning plan, and we think it should be given the force and effect of an amendment to the zoning plan which it is.

We will discuss these matters later and more at length in this opinion.

Under the italicized portion of the statute, Code Section 10268.5, above quoted, did the county court acquire jurisdiction and did they properly exercise that jurisdiction if acquired under the facts of the instant case?

On October 10, 1953, the following notice was published in the Knoxville Journal, a newspaper published in Knox County, City of Knoxville, Tennessee:

"Public Notice—The following amendment to the Knox County Zoning Regulations will be presented at the next session, regular, special or adjourned of the Quarterly Court of Knox County to be held after thirty (30) days from the date of this notice, October 10, 1953, at the Court House in Knoxville, Tennessee. Data pertinent to this amendment may be seen in the Planning Commission Office, Room 212 Court House, Knoxville, Tennessee.

"Petition of Roy C. Brown, Trustee, for the rezoning from Residential 'B' to Commercial 'A' of the following described property: (then follows the legal description of the Brown property)."

On November 24, 1953, the County Judge pursuant to statute called a meeting of the Quarterly County Court. Among other things stated for this called meeting was ''taking any and all action necessary concerning any zoning matters.'' This meeting was called for November 30, 1953, at 9:00 o'clock in the morning. At this called meeting of the Quarterly County Court the minutes of the court show: ''In re: Rezoning, Petition of Roy C. Brown'' and that under this heading the secretary of the Planning Commission presented the above matter to the County Court. Following this one of the Squires who lived in this district asked the people to speak for or against the petition and that a large delegation was present against the petition. A great number of them including two lawyers spoke on the matter. Then follows: ''Esq. Bayless offered a motion that the petition of Roy C. Brown for rezoning from Residential B to Commercial A—property on the West side of Chapman Highway; Tract # 1 beginning at Young High School property and running Southeast along Chapman Highway to Overbrook Drive, a distance of 321.5 feet, containing 1.43 acres; Tract #2 starting at a point 524 feet southeast of Overbrook Drive and following along Chapman Highway for a distance of 1580 feet and containing approximately 18.9 acres, be rezoned from Residential B to Commercial A, which motion duly seconded by Esq. Beard, carried on roll call, said roll call being as follows''. Then follows the calling of each Squire showing that one member of the court did not vote, two members voted no and there were two absent, and fourteen members voted in favor of the rezoning. Thus it appears that this motion or resolution was overwhelmingly passed by the court.

Subsequently at the regular meeting of the Quarterly County Court a formal written resolution was offered

ratifying the action of the court which was taken on November 30, 1953. This formal written resolution ratifying the action of November 30, 1953, was carried by a favorable vote of all members of the court except one who voted no and one who passed.

By adverting to the Code Section, 10268.5, controlling (above copied) we see that under this section one desiring to amend or change the zoning regulations must give at least 30 days notice of the time and place of a public hearing which the County Court holds thereon. Under the record as shown herein the notice above copied was published in a newspaper more than 30 days before the hearing was had by the Quarterly County Court. Obviously from this notice one cannot be mistaken as to where the hearing will be, that is before the Quarterly County Court at the first meeting after 30 days from October 10, 1953. Then the County Judge does call a meeting for November 30, 1953, which is more than 30 days from October 10th, and in this call which is a public record these zoning matters are to be taken up. Thus it seems that there is no mistaking the time that this public hearing is called for and the place. We think it is generally known that these matters coming before the County Court are not set like a case set for a specific hour but they are, as a rule, taken up for consideration following the disposition of routine matters concerning which only members of the court have a special and particular interest. The minutes of the court show that there was this large public gathering and that they were heard and it was debated pro and con. Thus it appears that there was no mistaking of the subject matter or of the intent of the Quarterly County Court to consider the rezoning of this property, a description of which was published in the paper more than 30 days previously, and

which obviously gave notice to the people opposed thereto, who did appear before the court and entered a protest.

■ It is argued very forcibly that since the notice was not given by any official of the county that it was void and had no effect. As we read the statute, Code Section 10268.5, the statute does not require that the notice be given by the County Court Clerk or by the Zoning Commission or anyone else, it merely says that "Before finally adopting any such amendment, the county court shall hold a public hearing thereon," and then "at least thirty (30) days' notice of the time and place of which shall be given by at least one publication in a newspaper of general circulation in the county; * * *." There is no requirement in this language that an official of the county must give this notice. Moreover the notice as given, the time and place where the hearing will be held, cannot be mistaken by anyone.

■ The requirements as to the giving of such notices of a hearing upon a petition for an amendment or a change in the zoning regulations must be substantially complied with. *Prusik* v. *Board of Appeal,* 262 Mass. 451, 160 N. E. 312; *Kane* v. *Board of Appeals,* 273 Mass. 97, 173 N. E. 1; *Mingo Holding Co.* v. *Town of Harrison,* N. J., 48 A. (2d) 919; *Retoske* v. *Boettger,* 249 App. Div. 624, 290 N. Y. S. 957. We think that the notice of the time and place, etc., given in the instant case, substantially complies with the statute requiring such a notice. Clearly this notice was not misleading and it gave the necessary information to the interested parties. These parties in addition to the notice as published in the newspaper had the privilege of going to the Planning Commission office and seeing just how these things were blocked out on the map that controls and affects the rights of all parties in interest.

The cases last above cited are cited by the appellants as authority for the position that they take herein. We have read these cases, and it is our position that they are governed by the particular section requiring notice under consideration in that case and these sections are entirely different from that under consideration in the instant case. Thus in the Kane case, supra, the court construed the statute as requiring the Board to mail the notices and that they could not delegate this to petitioners. In the case of *Roman Catholic Archbishop of Boston* v. *Board of Appeal,* 1929, 268 Mass. 416, 167 N. E. 672, 168 A. L. R. 108, a six days' notice was required and under the notice as given in the case there had not been a six-day notice. The same thing is true in the Boettger case, supra—the five days' notice required in this case had not been complied with.

Just as an illustration of how the court reasons some of these things, in the Kane case, supra [273 Mass. 97, 173 N. E. 3], the court said in discussing the importance of notice: ''It contained no adequate intimation of the subject-matter of the petition.'' In other words the court observed that there was no proper notice given to the people of what the matter was all about. We think there was substantial compliance with our statute by the notice given herein.

■ Considering next the fourth requirement of the statute Code Section 10268.5, which is that any amendment shall be published at least once in some official newspaper: It is very forcibly argued that the publication herein (above quoted) did not comply with this requirement in that, it is argued, the specific zoning amendment itself must be published at least once in the official newspaper of the county and a mere statement that certain property will be rezoned from one classification to an-

other is not sufficient. With this argument we are unable to agree. This too, if substantially complied with, is sufficient. The statute says that "any such amendment shall be published", etc. The notice that was published was that "the following amendment to the Knox County zoning regulations" would be presented, etc., to the Quarterly County Court at the next meeting after 30 days from the date, and the notice set forth whose property would be rezoned and where it was situated. This is a substantial compliance with the provisions of the statute. It is shown on the face of this notice that it is on the petition of Roy Brown, and it shows the change in the zoning classification that he desires and gives a complete description of his property and also notifies the people where they can go, the room number of the Planning Commission, and see how this works out on the map and it is really on this map that the changes are made. Thus it seems that there is a sufficient publication of the amendment desired which was passed by the Quarterly County Court.

Next it is very forcefully argued that the action of the county court hereinabove quoted, that is the motion of Squire Bayless followed by the description of where the property was, etc., and then carried by the court was insufficient. The reason for this argument is that the statute through its various sections refers to what the county court shall do, if it makes any of these changes, refers it to these different acts as done by ordinance, in other words, that when the county court decides to create a Planning Commission and to zone its property, it must do so by ordinance and that the language of the statute all the way through is that all of these things must be done by ordinance. We cannot agree that the essential dictionary definition of an ordinance must necessarily be carried out in enacting a zoning regulation or changing

property from one zone to another are necessary under this statute. It was not the intention of the Legislature to spell out the exact procedure to be followed by the several county courts of this State in enacting legislation, that is that in matters of rezoning the procedure should be specifically by ordinance in the same manner and form as by the Legislature. The Legislature knew that it was not the practice of the county courts of the State to enact their legislation by ordinance, but rather they used the resolution and the motion method.

The statute does not use the words "be it ordained" as is generally prescribed by the ordinance of a city or town. Where it clearly appears, as it does in the case at bar, that the form of enactment is by resolution, and indicates the undoubted intention of the court to officially declare its purpose, it is equally effective as a formal ordinance. This is all that is required by the statute of the county court in enacting such legislation. In the instant case there can be no mistaking the intention of the court when it passed this resolution to rezone a specific property as described from one zone to the other. In 62 C.J.S., Municipal Corporations, Sec. 411, p. 787, it is said: "A resolution passed with all the formalities required for passing ordinances may operate as an ordinance regardless of the name by which it is called."

Under this quotation cases are cited from Indiana, Kentucky and Texas. The reasoning back of these decisions certainly applies to the facts of the instant case and therefore the rule above quoted should apply and be adopted herein.

It is not necessary for us to consider and rule on the question raised of whether or not the attendance of these people at the county court was a waiver of any defect in the notice. For the reasons above expressed the decree of the Chancellor must be affirmed.