STATE of Tennessee, on Relation of
SCA CHEMICAL SERVICES, INC.,
Plaintiff/Appellant

v.

Christ T. SANIDAS, Chief Building Official of Shelby County; Shelby County, Tennessee; William N. Morris, Mayor of Shelby County; and County Commissioners: Charles R. Perkins, Chairman; Pete Sisson; Ed Williams; Mike Tooley; Walter Lee Bailey, Jr.; Minerva Johnican; Vasco A. Smith; Jesse H. Turner, Sr.; Clair D. Vander Schaaf; Carolyn H. Gates; and James L. Rout, Jr., and The City of Memphis; Wyeth Chandler, Mayor of the City of Memphis, and City Council Members: Oscar H. Edmonds, Jr., Chairman; Jeff Sanford; A.D. Alissandratos; Barbara Sonnenburg; Thomas H. Todd, Jr.; Patricia Vander Schaaf; Glenn Raines; Billy Hyman; Ed McBrayer; Michael A. Hooks; Robert B. James; Dr. James W. Ford; and J.O. Patterson, Jr., Defendants/Appellees.

Court of Appeals of Tennessee,
Western Section, at Jackson.

Sept. 20, 1984.

Application for Permission to Appeal
Denied by Supreme Court
Dec. 17, 1984.

**558**

J. Alan Hanover and William M. Walsh, Hanover, Walsh, Jalenak & Blair, Memphis, for plaintiff, appellant.

Carroll C. Johnson, J. Minor Tait, Jr., Asst. Shelby County Attys., and McDonald Yawn, Asst. City Atty., Memphis, for defendants, appellees.

TOMLIN, Judge.

This cause began as a mandamus action and a suit for declaratory judgment against the City of Memphis and Shelby County governments and the Chief Building Official of Shelby County. The relator, SCA Chemical Waste Service, Inc. (hereafter "SCA" or "plaintiff") sought to void an amendment to the comprehensive Memphis and Shelby County zoning ordinance passed at a public hearing held by the joint legislative bodies of the two governments for the purpose of considering and passing the ordinance, but without the amendment. SCA also sought a writ against the Chief Building Officer of Shelby County to require him to issue a building permit to it for a proposed chemical waste treatment plant. The chancellor found that the amendment submitted and passed at the public hearing, without prior notice of any kind, was not a substantial enough change to require its prior consideration by the Shelby County Land Use Control Board (formerly the Shelby County Planning Commission) and dismissed the complaint. An appeal was taken to the Supreme Court who transferred the case to this Court, stating that the action was one for declaratory judgment rather than mandamus.

Two issues are presented to this Court for our consideration on appeal: (1) whether or not the amendment, submitted for the first time at the public hearing and passed at that time, was a valid and lawful amendment to the comprehensive zoning ordinance inasmuch as it was neither submitted to the Shelby County Land Use Control Board prior to its passage, nor subject to a public hearing by the joint legislative bodies prior to its passage; and (2) whether or not, by simple resolution, the Shelby County Commission (hereafter "County Commission") can make the granting of a building permit conditional upon the applicant's submitting written compliance with the U.S. Equal Opportunity of Employment Act of 1972, as codified in 42 U.S.C. § 2000e et

seq. (1976). In the opinion of this Court, both of these issues are resolved in favor of the plaintiff.

Most of the essential facts in this case are not in dispute. SCA, a public company listed on the New York Stock Exchange, is in the business of collecting and disposing of garbage and refuse, including the disposal of hazardous wastes generated by government and industry. The handling and disposal of hazardous wastes is regulated by the Federal Resources Conservation and Recovery Act, 42 U.S.C. § 6901, et seq. (1976) and the Tennessee Hazardous Waste Management Act, T.C.A. § 68–46–101, et seq. SCA, after extensive research of the southeastern part of the United States, proposed to acquire a site in Shelby County on which to build an incinerator and chemical waste treatment plant. Various kinds of waste would be brought to this plant in bulk quantities to be unloaded, analyzed and put through an appropriate treatment process. Any material residue would be shipped off to a chemical landfill. Waste water from this process would be analyzed, and if in compliance with the agreement with the Public Works Department of the City of Memphis, it would be discharged into the North Waste Water Treatment Works.

Having selected Shelby County as a location for one of its plants, in August, 1980, SCA began making preparations to obtain appropriate permits and to acquire a site. At that time, through legal counsel, it reviewed the zoning laws in Memphis and Shelby County and determined that the heavy industrial district or zone classification designated M–4, as designed under the zoning ordinances then existing, would permit the building and operation of such a facility.

SCA was also fully cognizant that at that time a comprehensive new zoning ordinance was being considered by the legislative bodies of the city and county. Plaintiff was advised by its counsel, and correctly so, that the new ordinance as proposed would not affect plaintiff's plans to locate its plant in the heavy industrial district, other than to change the designation of that zone from "M–4" to "I–H."

What has been designated as the "new comprehensive zoning ordinance," was initially proposed by the Memphis and Shelby County Office of Planning and Development in 1978. The final draft of the ordinance, as recommended by the Control Board to the legislative bodies of the City of Memphis and Shelby County on July 23, 1980, was likewise identical to both the existing ordinance and the initial draft of 1978 in regard to the land uses permitted in the M–4 or I–H zone. One of the uses permitted in this zone was "garbage or refuse collection service," which of course was not applicable to the use here intended by SCA. There was also a category for chemical plants, in which category it appears that SCA's activities would fall.

Pursuant to law, as we will consider in more detail later, the Control Board held a public hearing on July 23, 1980, to consider the comprehensive ordinance recommended to it by staff. At this public hearing no changes were made in the text of the ordinance as recommended to it. The Control Board recommended the adoption of the ordinance in its original form to the joint legislative bodies of the city and county.

On September 25, 1980, there appeared in the "Daily News," and perhaps other newspapers in Memphis and Shelby County, the full text of the proposed zoning ordinance to be considered by the legislative bodies of the two governments in joint session on October 6, 1980. Inasmuch as plaintiff had concluded that the only change to be made by the proposed ordinance in the zone under consideration was the change in designation, no representatives of plaintiff attended the public hearing.

At the public meeting of the joint legislative bodies on October 6, 1980 representatives of the staff of the Office of Planning and Development submitted almost six pages of changes and modifications to the proposed ordinance. For the most part they were what has been designated and agreed upon as "housekeeping" changes.

However, two changes were proposed and adopted that materially affected plaintiff. First, a new category of use in the I–H zone was created and designated as "refuse processing, treatment and storage." Secondly, it was provided that such use could not be carried on in the I–H zone as a matter of right, but rather it would require the obtaining of a special use permit. Both the zoning ordinance as it existed prior to the consideration and adoption of the comprehensive zoning ordinance and the new comprehensive zoning ordinance itself required a special use permit before a building permit could be issued for various operations to be carried on in both residential and industrial areas in accordance with specific regulations. We will address this in more detail hereafter.

The parties agree and stipulate that this amendment, along with others not material here, was passed on October 6, 1980; that it was first recommended to the joint legislative bodies by the staff of Planning and Development on that day; was never submitted to the Control Board for approval, disapproval or modification; the Control Board never met either in public or in private to consider same; the Control Board never made any recommendation to the joint legislative bodies regarding this amendment; and this amendment had not previously been noticed to the public by any type of newspaper advertisement or any other type of public notice. The ordinance, as thus amended, passed the joint legislative bodies on October 6, and 7, 1980.

Having made a site selection following an extensive study, on October 8, 1980, SCA, unaware of the substantial change in the ordinance, entered into a contract to purchase a 25-acre tract in North Shelby County, zoned heavy industrial, M–4 (or I–H under the new ordinance). The contract was consummated by the taking of title to the property by deed recorded January 8, 1981.

Still oblivious to any changes affecting it, SCA's attorney was advised by Mr. Christ T. Sanidas, Chief Building Official of Shelby County, on October 8, 1980, that as of that time the proposed use of this property in the M–4 zone by plaintiff was permissible.

The first inkling of any change that would directly affect SCA came to its attention shortly after October 22, 1980, when a resolution passed by the County Commission on that date was made public. In the interim SCA had not only applied for a grading-building permit, but it also met with representatives of the Building Department of Shelby County regarding its grading-building permit application. Inasmuch as it is material to this litigation, this resolution is set forth in its entirety:

RESOLUTION DIRECTING THE COUNTY ADMINISTRATION NOT TO ISSUE ANY PERMITS TO THE SCA CORPORATION UNTIL January 15, 1981

WHEREAS, Great public concern has been shown regarding the location of a chemical hazardous waste treatment plant by the SCA Corporation on Tay-For Drive in Shelby County; and

WHEREAS, The Shelby County Commission by joint ordinance/resolution with the City of Memphis adopted a new zoning code on October 6, 1980 with its effective date being January 1, 1981; and

WHEREAS, This new zoning code allows for legislative review and safeguards to be placed upon any such plant via the special permit route; and

WHEREAS, Additional Federal EPA guidelines and standards will become effective in November, 1980; and

WHEREAS, Pursuant to the health, welfare and safety of the citizens of Shelby County, this Commission deems it necessary for the aforementioned new zoning and EPA guidelines to be in effect when any permits are issued to this new industry;

NOW, THEREFORE, BE IT RESOLVED BY THE BOARD OF COUNTY COMMISSIONERS OF SHELBY

COUNTY, TENNESSEE, That the County Administration, acting by and through any of the departments, boards, authorities, commissions or any other entity under its jurisdiction pursuant to Chapter 260 of the Private Acts of 1974 or any other applicable State or Federal law, is directed not to issue any permits regarding the proposed site for the SCA Corporation's hazardous waste treatment plant until January 15, 1981, provided that the SCA Corporation meets all applicable standards, rules and regulations then in effect for the issuance of permits.

BE IT FURTHER RESOLVED, That the aforementioned permits shall not be issued on or after January 15, 1981, until and unless the SCA Corporation submits an equal opportunity compliance statement to the appropriate office of the Shelby County Administration.

On November 30, 1980, the County Commission passed a second resolution similar to the one above quoted for the purpose of amending the prior resolution by deletion of the specific reference to SCA by name. Following the passage of the initial resolution of October 22, 1980, SCA filed suit in the Chancery Court of Shelby County to attack the validity of the resolution which sought to require it to wait until January 15, 1981, two weeks after the effective date of the new ordinance, to get its building permit. In *State ex rel, SCA Chemical Waste Services, Inc. v. Konigsberg,* 636 S.W.2d 430 (Tenn.1982), the Supreme Court upheld the validity of what has been termed a stop-gap ordinance to preserve the status quo. This decision in effect required SCA to wait until the new ordinance became effective to apply for its building permit. Only the validity of the stop-gap resolution was considered there as the court did not rule upon the validity of the amendments now being challenged.

Back to the chronology of events. On November 18, 1980, the Tennessee Department of Public Health issued SCA a permit to construct and operate a chemical waste treatment facility at the Shelby County site. On November 7, 1980, SCA and the Division of Public Works of the City of Memphis reached a preliminary agreement concerning waste water discharge from the proposed facility. SCA was advised that it would not be allowed to discharge waste water until mid-1981, when the Loosahatchie Interceptor Line was tied into the North Waste Water Treatment Plant. On December 24, 1980, SCA made application to the Shelby County Building Department for a building permit.

On January 15, 1981, a "permit to construct a source of air contamination," otherwise known as a clean air permit, was issued to SCA by the Memphis-Shelby County Health Department. On January 16, 1981, Mr. Sanidas, the Chief Building Official of Shelby County, wrote a letter to attorneys for SCA returning to them its applications for a site grading permit and a building permit, along with checks tendered with these applications. After explaining that action on these applications had been delayed until after January 15, 1981 by the County Commission resolution above referred to, Sanidas gave as reasons for the applications' rejection (1) the future completion of the inter-connector sewer into the North Waste Treatment Plant, (2) the absence of a statement by SCA showing compliance with the Equal Employment Opportunity Act, and (3) the failure of SCA to apply for a special use permit from the Control Board as required under the new zoning law. This litigation was initiated less than a month later.

## I. THE VALIDITY OF THE AMENDMENT.

In order to reach a decision on this critical issue, we first must examine in more detail the substance of the October 6, 1980 amendment and in what manner, if any, it affected SCA and its plans to construct a chemical waste treatment plant in the M–4 (I–H) zone.

It is uncontradicted that in the zoning ordinance in existence in 1980 prior to the introduction of the "new comprehensive zoning ordinance" and in the new comprehensive zoning ordinance as well, SCA, as a

matter of right, could have obtained a building permit for the construction of its chemical waste plant in the I–H district, located within the five-mile zone, by complying with the normal procedure required by the Shelby County Building Department of all applicants, save those necessitating a special use permit. This normal procedure in essence requires the submission of an application with plans and specifications signed by a licensed architect or engineer and the appropriate fee. If the plans and specifications passed muster of the various engineering departments and the land use was proper, a permit would ordinarily be issued.

On the other hand, by virtue of the amendment adopted on October 6, 1980, a new category or use was created that, by its specifications, unquestionably applied to SCA's intended operations. In addition, rather than being given the privilege as a matter of right to obtain a permit through normal procedures, SCA would now be required to obtain a "special use permit."

In the Memphis and Shelby County zoning laws special use permits were nothing new. There is an entire section dedicated to this procedure in the new comprehensive zoning ordinance. This section contains general standards that are applicable to all categories that require special use permits, specific standards that apply only to certain categories, and the procedure to be followed in seeking to obtain such a permit. In substance, the applicant for a special use permit must make application to the Land Use Control Board, which is obliged to call a public hearing pertaining to the application within 35 days and not later than 75 days of the date of the application. Following the public hearing, the Control Board is required to make a recommendation to the legislative body involved. The procedural rules proceed to state that in order to obtain a specific use permit a majority vote of the legislative body is required. However, if the land involved is located within the previously described five-mile zone, a two-thirds vote for approval is necessary. The rules further provide that in the event an application for a spe-

cial use permit is denied, the applicant may not reapply for 18 months.

Additionally, four standards are set out by which the Control Board must review each and every application for a special use permit. The board must consider the effect of the proposed use upon the neighborhood, whether the building sought to be erected will be compatible with the immediate neighborhood, whether the building will be adequately served by essential public facilities and services, and whether the building or use of the land will result in damage or loss of any feature determined by the legislative body involved to be of significant natural, scenic or historic importance.

The above represents the sum and substance of the terms and conditions under which SCA was thus compelled to operate by virtue of the October 6, 1980 amendment.

Although elemental, it bears repeating here that the right of city and county governments to enact zoning ordinances is based upon powers delegated to them by the state legislature either by specific enabling acts or by the granting of charters. *Henry v. White*, 194 Tenn. 192, 250 S.W.2d 70 (1951); *State ex rel Lightman v. City of Nashville*, 166 Tenn. 191, 60 S.W.2d 161 (1933). Furthermore, inasmuch as zoning laws are in derogation of the common law and operate to deprive a property owner of a use of his land that would otherwise be lawful, they are to be strictly construed by the courts in favor of the property owner. *State ex rel Wright v. City of Oak Hill*, 204 Tenn. 353, 321 S.W.2d 557 (1959); *Red Acres Improvement Club, Inc. v. Burkhalter*, 193 Tenn. 79, 241 S.W.2d 921 (1951).

In finding the amendment complained of to be valid, the chancellor did so solely on the basis of a finding that it was "not so substantial as to require any further public notice by or proceedings before or recommendation by the Land Use Control Board or any further public notice before said amendment could be validly passed by ei-

ther the City Council and/or County Commission ...." It would appear that the chancellor was attempting to apply the "substantial" test as set out in *Wilgus v. City of Murfreesboro*, 532 S.W.2d 50 (Tenn.Ct.App.) *cert. denied* (1975).

While we think the chancellor somewhat missed the point of *Wilgus* in the "substantial" test, we think it immaterial because in the opinion of this Court there is a more compelling reason for our reversing the action of the chancellor in this regard—the question of due process.

The power of Shelby County to enact zoning legislation within the five-mile zone stems from enabling legislation passed by the state legislature in the form of Chapter 614 of the Private Acts of 1931. This act has been codified as § 7 of §§ 23–44 of the Laws of Shelby County Annotated, and in light of its importance to this issue is set forth herein verbatim.

Section 7. Be it further enacted, That in order to carry out the purposes of this Act, a County Planning Commission is hereby created to be composed of the members of the Planning Commission of any municipality within the population classification herein provided for, and the Board of County Commissioners and Chairman of the Quarterly County Court of counties within the population classification herein provided for, and before any plan for such five mile zone shall be adopted, such County Planning Commission shall recommend boundaries or districts and appropriate regulations to be enforced therein. Such commission shall make a tentative report and hold public hearings thereon, at such times and places and upon such notice as it may fix, before submitting its final report. Said legislative bodies shall not determine the boundaries of any district, nor impose any regulations until after the final report of such County Planning Commission.

After such final report is submitted to both legislative bodies as aforesaid, and final adoption of regulations by each, said legislative bodies may, from time to time, amend, supplement or change the boundaries or regulations so adopted, but not without consent of each. Notice of the adoption of such amendment, supplement or change in the regulations, shall be given by publishing such notice one time in some daily newspaper of general circulation in the city of the population classification hereinabove set forth within such county. Notice shall state the time and place, not earlier than ten days from the date of publication, at which the legislative bodies shall meet in joint session to hear remonstrances or protests against the making of such amendment, supplement or change. At the time and place thus appointed, said legislative bodies shall meet in joint session, and all persons whose property will be affected by such amendment, supplement, or change, may appear in person or by attorney or by petition, and protest against making of such amendment, supplement, or change, and after hearing such protests, if any, such legislative bodies, in the manner hereinbefore provided, may confirm, modify or rescind such regulations in whole or in part. If, however, a protest against such amendment, supplement or change be presented in writing to either legislative body, within ten days from the date of publication, duly signed and acknowledged by the owners of 20% or more of any frontage proposed to be altered, or by the owners of 20% of the frontage immediately in the rear thereof, or by the owners of 20% of the frontage directly opposite the frontage proposed to be altered, such amendment, supplement or change shall not be passed except by a four-fifths vote of each such legislative body.

A reading of the above reveals that Section 7 mandates that any amendment, supplement or change concerning the zoning regulations of Shelby County must be preceded by a published notice in a newspaper of daily circulation at least ten days prior to the hearing in order to hear "remonstrances or protests against the making of such amendment, supplement or change." It is conceded by defendants that the

amendment complained of by SCA was not considered by the Control Board, no public hearing was held by the Control Board, nor was there any published notice that the amendment would be considered at the joint session of the two legislative bodies at the time it was enacted. The importance and significance of notice and a public hearing is set out in 82 Am.Jur.2d *Zoning and Planning*, §§ 48–50 (1976).

§ 48. *Preliminary planning and report by zoning commission.*

Under most enabling acts, including the Standard State Zoning Enabling Act, it is required that a zoning commission be appointed and its report be received by the legislative body before the adoption of a comprehensive zoning ordinance. Where this requirement prevails, a local legislative body cannot enact a valid zoning ordinance until it has received the final report of the zoning commission. That report is not conclusive on the local legislature, however; it is merely advisory, and the local legislature has the right to make the final decision as to what the zoning ordinance shall contain and provide.

§ 49. *Notice and hearing, generally.*

Zoning enabling acts ... commonly require notice and hearing before the local legislative body before the enactment of a zoning ordinance or amendment. Such a requirement is mandatory, and the failure of the legislative body to conduct an appropriate hearing, after proper notice thereof, will invalidate the zoning ordinance ....

§ 50. *Statutory requirements of notice prior to adoption.*

....

Regardless of the type of notice called for by the statute, the basic requirement that notice be given is uniformly held to impose upon the zoning authority a mandatory duty to give it, in default of which jurisdiction to pass valid zoning measures is lacking. The rule that compliance with the statute is mandatory and jurisdictional has been announced in scores of cases and appears to prevail in every

jurisdiction where the question has been presented. It is founded on the premise that local government, having no residual power to zone, is absolutely incapable of doing so except in the manner specified in the statute. The rule is applicable to measures passed upon a notice which was defective in some respect as well as to those passed upon no notice at all. Except where the language of the statute suggests that it was intended to apply only to new or originally adopted zoning ordinances, it is of no consequence that the ordinance under attack merely reclassified certain specific property or amended or revised an earlier measure on the one hand, or was a new or original enactment on the other.

Other authorities on the subject of zoning are in accord with these general principles. In 1 Anderson, American Law of Zoning § 4.03 (1976), we find:

Mandatory requirements

....

Procedural requirements are considered by the courts to be safeguards against arbitrary exercise of power. Failure to comply with such procedural requirements has been regarded not only as an ultra vires act on the part of municipal legislators, but also as a denial of due process of law. Indeed, a statute or ordinance which fails to require legislative notice and a hearing prior to the enactment of a zoning ordinance may be regarded as invalid for failure to require procedure which comports with due process of law.

In Section 4.13 it is stated:

As is true of procedural requirements generally, the requirements for publication, service and posting are mandatory; failure substantially to comply with them results in an invalid ordinance. Commenting on a statutory requirement that notice be given in a specific manner, an Arizona court said: "Such a rule is no mere legal technicality," rather it is a fundamental safeguard assuring each citizen that he will be afforded due process of law.

Section 415 more closely addresses the issue presented before us:

§ 4.15. Necessity for second hearing.

....

After the notice has been published, but before the hearing has been held, a proposal for amending the zoning regulations may be changed. *If the change is so fundamental that it is no longer within reach of the notice of hearing, it will be necessary to publish a new notice. Failing that, substantial compliance with the enabling act may require that a second hearing, preceded by proper notice, be conducted.* If, however, the change is not substantial, a second hearing will be unnecessary. (emphasis added)

*See also* Annot. 96 A.L.R.2d 449 (1964).

Our Supreme Court has, in essence, embraced the position stated by the writers of the text referred to above. In *Clapp v. Knox County*, 197 Tenn. 422, 273 S.W.2d 694 (1954), while the notice therein was approved as valid, the Court said:

The requirements as to the giving of such notices of a hearing upon a petition for an amendment or a change in the zoning regulations must be substantially complied with. [citing authorities from other jurisdictions] .... We think that the notice of the time and place, etc., given in the instant case, substantially complies with the statute requiring such a notice. *Clearly this notice was not misleading and it gave the necessary information to the interested parties.* (emphasis added)

*Id.*, 273 S.W.2d at 698.

The case of *Barrie v. Kitsap*, 84 Wash.2d 579, 527 P.2d 1377 (1974) *reh'g denied*, 93 Wash.2d 843, 613 P.2d 1148 (1975) most succinctly expresses the purpose of notice in a zoning statute and the effects of deficient or no notice:

The purpose of the notice required by this statute is to fairly and sufficiently apprise those who may be affected by the proposed action of the nature and character of the amendment so that they may intelligently prepare for the hearing.

*Id.*, 527 P.2d at 1380.

The Washington court continued by observing that,

Our holding that the notice in this case is deficient is mandated by the constitutional requirement calling for procedural due process of law. One of the basic touchstones of due process in any proceeding is notice reasonably calculated under all the circumstances that apprise affected parties of the pending action and afford them an opportunity to present their objections. *Armstrong v. Manzo*, 380 U.S. 545, 85 S.Ct. 1187, 14 L.Ed.2d 62 (1965).

*Id.*, 527 P.2d at 1381.

 It is clear to us from this record that at the October 6, 1980 meeting the two legislative bodies were attempting to do nothing more than, as they say in Western parlance, "head 'em off at the pass," referring specifically to SCA.

We make this observation for more than one reason. First, a transcript of the public hearing at which the amendment complained of was adopted contains the following:

RITZ [Director of Office of Planning and Development]: ... it says on page 142 on * * * chart 1 we're making a change, we're adding refuse processing treatment and storage and inserting an "s" under the IH district. Now specially, this came to our attention because of the proposed refuse disposal plant in North Memphis and we found that under the present ordinance, you can put that kind of business in any M3 district in the City of (sic) the County.

....

PERKINS: In that regard, if they decide to move that out into the County somewhere who has the authority to approve that?

RITZ: Depending of whether it fell within five miles of the city of (sic) not, it would either be jointly yours or all yours. And it would require a special permit.

. . . .

GATES: Do we have ground rules that we have to allow special permits?

RITZ: You do not have to. You can deny them.

GATES: On any grounds?

RITZ: That's right.

. . . .

GATES: Under present regulations, you say if they don't get a building permit prior to January 1st, Now (sic), under what rules will they be traveling under?

RITZ: Until then?

GATES: Yes.

RITZ: They will be able to get a building permit in the City if they are zoned M3 and what is it in the County—heavy industrial in the County.

. . . .

RITZ: Yes sir, they also need a permit from the Health Department with respect to Air (sic) pollution probably and they also may need a permit from the State of Tennessee on the fact that they come under a waste disposal. But, the zoning thing is what give (sic) the governing bodies an opportunity to exercise some decisions and that's why we stuck it in. SCA has to get at least two permits from City/County agencies.

The second reason for this Court's conclusion that this precipitous action was aimed specifically at SCA in an attempt to gain more control over its operations without due process of law, is based on the resolution passed by the county commission on October 22, 1980 and litigated in *State of Tennessee, ex rel SCA Chemical Waste Services, Inc. v. Konigsberg,* 636 S.W.2d 430 (Tenn.1982), which ordered all departments, boards, etc. of Shelby County not to issue any permits to SCA until it met all applicable standards, etc.

The manager of the zoning staff in the Memphis-Shelby County Office of Planning and Development testified that this amendment was added because it was a mere "oversight," that it had been omitted from the original draft, notwithstanding the fact that the staff had prepared the comprehensive zoning plan in 1978 and had it under advisement and study from that time. We find this explanation unacceptable. This witness did not attend the October 6th hearing. Thus he did not hear the testimony of his boss, Mr. Ritz, quoted above. In light of this testimony it is difficult to consider this action was a result of an "oversight."

■ In our opinion, SCA was denied due process on several counts. First, the alteration of its rights by this amendment was substantial. Instead of having the broad, general privilege of getting a permit by complying with simple requirements, a category created specifically for plaintiff was added, so as to give two governmental agencies, over and above the building department, control. It granted these governmental agencies broad standards by which to judge SCA that are totally different than those applied to land use privileges of a non-special use character. Furthermore, in the event the application was denied, SCA was prevented from reapplying for a period of eighteen months.

In addition, by not having publication and notice, SCA was denied the right of preparing its case in opposition to the amendment and was likewise denied the opportunity of marshaling the troops, so to speak, to develop neighborhood opposition, which, if accomplished, would have required a different vote of the legislative bodies for passage than otherwise. We therefore hold that the amendment of October 6, 1980, as adopted by the joint legislative bodies, creating the category of "refuse process, treatment and storage" in the I–H zone and requiring a special use permit for such a category, is invalid.

## II. THE MATTER OF EQUAL EMPLOYMENT OPPORTUNITY.

SCA likewise complains of a condition sought to be imposed upon it by the stopgap resolution of the county commission of October 22, 1980, which stated in essence that plaintiff could not obtain building permits for the chemical waste treatment plant until it submitted a statement show-

ing "equal opportunity compliance." Although not well stated, it is clear to us that the commission was attempting to require SCA to show compliance with the federal law dealing with equal opportunity and employment, codified as 42 U.S.C. §§ 2000e, et seq. (1976). We can in no way determine the motives of the commission in inserting this paragraph in this stop-gap resolution, but it is apparent that it was another attempt to place a road block in the path of SCA.

In his deposition, Mr. Sanidas, the chief official of the Shelby County Building Department, testified that it was not part of his regulations to require that an applicant for a building permit prove compliance with the Federal Equal Opportunity Act, stating: "No, sir, that is not in my codes." He also confirmed that proof of compliance with the Act had nothing to do with getting a building permit in Shelby County.

■ Furthermore, this Court would observe that the enforcement of the Equal Employment Opportunity Act is not the direct responsibility of the Shelby County Commission. The Act is well written and clearly sets forth the machinery for its enforcement. The Shelby County Commission is not included, nor is its building department. This portion of the October 22, 1980 resolution is ultra vires, invalid and is hereby declared null and void.

■ This Court is without authority to issue a writ of mandamus. T.C.A. § 16–4–108. However, having declared the amendment of October 6, 1980 to the zoning ordinance invalid and the subsequent provision of the October 22, 1980 resolution pertaining to equal employment opportunity null and void, it is the opinion of this Court that SCA is entitled to proceed to obtain a building permit for its proposed plant in accordance with the provisions of the Shelby County Comprehensive Plan adopted October 6, and 7, 1980, but in the substance and form as advertised on September 25, 1980, without the abortive last-minute amendment and restriction sought by resolution.

The decree of the chancery court is reversed, and the October 6, 1980 amendment is declared void and invalid. The equal opportunity compliance statement in the October 22, 1980 resolution is declared null and void. We thus declare that upon compliance with the provisions of the Shelby County Comprehensive Zoning Plan adopted October 6–7, 1980, but without the voided amendments, and upon compliance with the standard requirements of the Shelby County Building Department, SCA is entitled to obtain its building permit. This case is remanded for further proceedings, if necessary, in accordance with this opinion. Costs in this cause are taxed one-half to Shelby County and one-half to the City of Memphis, for which execution may issue, if necessary.

NEARN, P.J. (W.S.) and CRAWFORD, J., concur.