IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
August 2, 2023 Session

## TINSLEY PROPERTIES, LLC ET AL. V. GRUNDY COUNTY, TENNESSEE

**Appeal from the Chancery Court for Grundy County**
**No. 6846     Melissa Thomas Willis, Chancellor**

———————————————————

### No. M2022-01562-COA-R3-CV

———————————————————

This case concerns the validity of a county resolution prohibiting quarries and rock crushers "within five thousand (5,000) feet of a residence, school, licensed daycare facility, park, recreation center, church, retail, commercial, professional or industrial establishment." The plaintiff landowners argued that the county failed to comply with the requirements in Tennessee's county zoning statute, Tennessee Code Annotated § 13-7-101 to -115. In the alternative, they argued that state law expressly preempted local regulation of quarries. However, the county argued that it was exercising its authority to protect its citizens' health, safety, and welfare under the county powers statute, Tennessee Code Annotated § 5-1-118. The trial court granted summary judgment to the county on the ground that it had no comprehensive zoning plan. This appeal followed. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed**

FRANK G. CLEMENT JR., P.J., M.S., delivered the opinion of the court, in which ANDY D. BENNETT and JOHN W. MCCLARTY, JJ., joined.

Clifton M. Miller and Erica Rose Marino, Tullahoma, Tennessee, and W. Travis Parham, and Michael Anthony Cottone, Nashville, Tennessee, for the appellants, Tinsley Properties, LLC, and Tinsley Sand & Gravel, LLC.

William C. Rieder, Tullahoma, Tennessee, for the appellee, Grundy County, Tennessee.

### OPINION

#### FACTS AND PROCEDURAL HISTORY

In early 2020, Tinsley Properties, LLC ("Tinsley Properties") bought property in an unincorporated area of Grundy County, Tennessee. Shortly after that, Tinsley Sand & Gravel, LLC ("Tinsley Sand") leased the property to operate a sand quarry. The quarry began operations in November 2021.

After learning about the new quarry, Grundy County Mayor Michael Brady conducted an informal investigation and determined that neither Tinsley Sand nor Tinsley Properties had obtained a county-issued permit as required by Grundy County Resolution No. 19-5-20c[1]. He also determined that the quarry violated the Resolution's location requirement, which mandated at least 5,000 feet between a quarry's property line and that of any "residence, school, licensed daycare facility, park, recreation center, church, retail, commercial, professional or industrial establishment." Grundy Cnty. Bd. of Comm'ns Res. No. 19-5-20c(VIII)(B). Mayor Brady informed Tinsley Properties of his findings in a letter and demanded the cessation of further quarrying activities.[2]

In February 2022, Tinsley Properties and Tinsley Sand (collectively, "Plaintiffs") commenced this action for declaratory judgment on the validity of Resolution No. 19-5-20c. Plaintiffs argued that the Grundy County Board of Commissioners acted ultra vires when it adopted Resolution No. 19-5-20c because the Resolution was a de facto zoning regulation and, therefore, subject to the requirements in Tennessee Code Annotated §§ 13-7-101 to -115 ("the County Zoning Act"). In the alternative, Plaintiffs asserted that Tennessee's air and water acts preempted Resolution No. 19-4-20c.

Grundy County ("Defendant") conceded that the Board of Commissioners did not follow the County Zoning Act when it adopted Resolution No. 19-5-20c. Still, it maintained that it had the power to regulate quarrying under its authority to pass laws for the health and welfare of its citizens under Tennessee Code Annotated § 5-1-118 ("the County Powers Statute").

The parties then filed competing motions for summary judgment with supporting affidavits and statements of undisputed material facts. After a hearing, the trial court granted summary judgment to Defendant and declared that Resolution No. 19-5-20c was valid and enforceable.

This appeal followed.[3]

---

[1] Plaintiffs have challenged the validity of Resolution No. 19-5-20c and Resolution No. 24-1-22A (Jan. 24, 2022). However, the latter simply amended the former; therefore we will consider the language of Resolution No. 19-5-20c as amended and omit any reference to Resolution No. 24-1-22A.

[2] Tinsley Sand applied for a quarry permit after commencing this action. The County promptly denied the application because "the site of the quarry/rock crusher does not meet the location requirements provided for in Resolution No. 19-5-20c." Although Resolution No. 19-5-20c provides for administrative review of permit denials, the County has expressly waived its right to require Plaintiffs to exhaust their administrative remedies.

[3] The trial court granted the Defendant's request for a temporary injunction but denied its request for a permanent injunction. Those decisions are not at issue on appeal.

STANDARD OF REVIEW

Because "[t]he local governments' power to control the use of private property derives from the General Assembly," "[t]he validity of local [land use] regulations should be measured against the statutes authorizing local governments to act." *KLN Assocs. v. Metro Dev. & Hous. Agency*, 797 S.W.2d 898, 902 (Tenn. Ct. App. 1990) (citing *State ex rel. SCA Chem. Servs., Inc. v. Sanidas*, 681 S.W.2d 557, 562 (Tenn. Ct. App. 1984)). "A trial court's interpretation of statutes, procedural rules, and local ordinances involves questions of law which appellate courts review de novo without a presumption of correctness." *Shore v. Maple Lane Farms, LLC*, 411 S.W.3d 405, 414 (Tenn. 2013).

## ANALYSIS

Plaintiffs contend that the Board of Commissioners was required to comply with the County Zoning Act when it adopted Resolution No. 19-5-20c because the Resolution is "tantamount to a zoning ordinance" under the substantial effects test in *Cherokee Country Club, Inc. v. City of Knoxville*, 152 S.W.3d 466 (Tenn. 2004). The Court adopted this test to determine "when an ordinance is a zoning ordinance, and thus subject to statutory zoning requirements." *Id.* at 472.

As restated in *SNPCO, Inc. v. Jefferson City*, 363 S.W.3d 467 (Tenn. 2012), the substantial effects test requires courts to consider both the terms and the effects of the challenged ordinance:

> The first step requires courts to review the terms of the challenged ordinance and the municipality's comprehensive zoning plan to determine whether the ordinance is so closely related to the zoning plan that it can be fairly characterized as tantamount to zoning. The second step requires the courts to determine whether the challenged ordinance substantially affects the use of the property that is the subject of the litigation. Both parts of the test must be satisfied before a challenged ordinance may be held to be tantamount to zoning.

*Id.* at 478. The County argues—and the trial court found—that Plaintiffs cannot satisfy the substantial effects test because the County has no "comprehensive zoning plan" to review. We respectfully disagree that this fact is dispositive.

## I. LACK OF ZONING PLAN

In *SNPCO*, the Tennessee Supreme Court considered whether a plaintiff could take advantage of the grandfather clause in the municipal zoning statute. 363 S.W.3d at 470. Because the grandfather clause applied only when the municipality "enacted a 'zoning restriction'" or "adopted a 'zoning change,'" *id.* at 475, the Court used the substantial effects test to determine whether the challenged ordinance was "tantamount to zoning." *Id.*

at 478. But before doing so, the Court observed that post-*Cherokee* appellate opinions had reached "somewhat inconsistent results" when applying the test to **municipal** ordinances. *Id.* Accordingly, in its restatement, the Court framed the first step according to the facts before it, requiring courts "to review the terms of the challenged ordinance and the **municipality's comprehensive zoning plan** to determine whether the ordinance is so closely related to the **city's zoning plan** that it should be considered as tantamount to zoning." *Id.*

Moreover, the Court in *SNPCO* did not limit itself to consideration of Jefferson City's zoning plan: the Court also noticed the fact that the challenged ordinance did not "refer to land, zones, buildings, lot lines, **or any other terms and concepts customarily associated with comprehensive zoning *plans*.**" *Id.* at 478 (emphasis added); *see also Cherokee Country Club, Inc.*, 152 S.W.3d at 474 ("The conclusion we have reached under the peculiar circumstances of this case is also consistent with the language and the purpose of Tennessee's statutory zoning law."). And Tennessee does not require a local government to "adopt a general plan before it can exercise its zoning power." *Foehring v. Town of Monteagle*, No. M2022-00917-COA-R3-CV, 2023 WL 3335296, at *7 (Tenn. Ct. App. May 10, 2023).

Thus, when a local legislative body has not adopted a zoning plan, courts may still determine whether a challenged ordinance is "so closely related to [a] zoning plan that it can be fairly characterized as tantamount to zoning." *SNPCO, Inc.*, 363 S.W.3d at 470; *cf. Sandy Mush Properties, Inc. v. Rutherford Cnty. ex rel. Bd. of Comm'rs*, 595 S.E.2d 233, 235 (N.C. Ct. App. 2004) (applying similar test despite lack of comprehensive zoning plan).

Our conclusion follows the underlying principle that a local legislative body may not "evade the protections thrown about the citizen's use of his property by the legislative limitations imposed on the zoning power by the device of labeling a zoning act a mere exercise of police power." *Cherokee Country Club, Inc.*, 152 S.W.3d at 471 (quoting *Ellison v. City of Fort Lauderdale*, 183 So. 2d 193, 195 (Fla. 1966)). Reserving application of the substantial effects test for cases in which the local government had a zoning *plan* would impede the courts' ability to enforce the County Zoning Act's requirements, which were put in place as "safeguards against arbitrary exercise of power." *Edwards v. Allen*, 216 S.W.3d 278, 285 (Tenn. 2007) (quoting *State ex rel. SCA Chemical Services, Inc.*, 681 S.W.2d at 564).

## II. RESOLUTION NO. 19-5-20C

Accordingly, we move forward by reviewing the terms of Resolution No. 19-5-20c to determine whether it is "tantamount to zoning."

Plaintiffs contend that Resolution 19-5-20c is tantamount to zoning because the Resolution imposes a distance requirement on the use of land for quarrying and requires

- 4 -

measurements be taken from "the nearest recorded property line of the quarry business to the nearest property line or boundary of" "a residence, school, licensed daycare facility, park, recreation center, church, retail, commercial, professional or industrial establishment." We respectfully disagree that these features make Resolution No. 19-5-20c "tantamount to zoning."

The County Zoning Act empowers county legislative bodies to pass ordinances regulating, *inter alia*, "the uses of land for trade, industry, residence, recreation, agriculture, forestry, soil conservation, water supply conservation or other purposes" in the county's unincorporated areas. *See* Tenn. Code Ann. §§ 13-7-101(a)(1). The Zoning Act does this by allowing counties to "divide the territory of the county which lies within the region but outside of municipal corporations into districts" and to "regulate the erection, construction, reconstruction, alteration and uses of buildings and structures and the uses of land" within those districts. Tenn. Code Ann. § 13-7-102; *see also Fam. Golf of Nashville, Inc. v. Metro. Gov't of Nashville*, 964 S.W.2d 254, 258 (Tenn. Ct. App. 1997) ("Zoning . . . involves the territorial division of land into districts according to the character of the land and buildings, their suitability for particular uses, and the uniformity of these uses." (citation omitted)).[4]

In *SNPCO*, the Court concluded that a challenged ordinance was not tantamount to zoning when the ordinance neither referred to nor depended on the city's zoning plan, and it did not refer "to land, zones, buildings, lot lines, or any other terms and concepts customarily associated with comprehensive zoning plans." 363 S.W.3d at 478. Instead, the ordinance had a "blanket command" prohibiting the manufacture or sale of fireworks "within the city limits of Jefferson City.'" *Id.* Thus, the Court found that the ordinance bore "little resemblance" to the ordinance in *Cherokee*, which targeted "property" that was "under review and consideration for an . . . overlay designation." *Id.* The Court also concluded that the fireworks ordinance reflected "the exercise of the City's traditional, general police power" and fell "squarely within the general police powers traditionally exercised by government." *Id.*

Since *SNPCO* was decided, we have had two opportunities to apply the substantial effects test. In the first, *Gene Lovelace Enterprises, LLC v. City of Knoxville*, No. E2019-01574-COA-R3-CV, 2021 WL 2395957 (Tenn. Ct. App. June 11, 2021), we concluded that the challenged ordinance was not tantamount to zoning because it regulated "the time and manner in which the subject businesses operate" and did not "depend upon the City's

---

[4] "The General Assembly has not limited local governments' authority to control the private use of property to the enactment of zoning ordinances." *KLN Associates*, 797 S.W.2d at 902. Relevant here, the legislature has also authorized counties to "[d]efine, prohibit, abate, suppress, prevent and **regulate all . . . uses of property** . . . detrimental, or liable to be detrimental, to the health, morals, comfort, safety, convenience or welfare of the inhabitants of the municipality." Tenn. Code Ann. § 6-2-201(22) (emphasis added). Thus, both the County Zoning Act and the County Powers Statute authorize counties to regulate land use.

zoning plan." *Id.* at \*4. In the second, *Metropolitan Government of Nashville and Davidson County v. Board of Zoning Appeals of Nashville and Davidson County*, No. M2016-01732-COA-R3-CV, 2017 WL 1655597 (Tenn. Ct. App. May 2, 2017), we applied the substantial effects test to an ordinance that prohibited "digital signs in certain districts based on the height of the signs and their distance from other signs and from residential property." *Id.* We concluded that the ordinance was not tantamount to a zoning regulation because it functioned "primarily to complement the uses of property as reflected in the zoning districts" and because the ordinance was "reflective of the city's powers and responsibilities to provide for the public safety." *Id.* at \*6.

Here, the Grundy County Board of Commissioners adopted a resolution that prohibited the location of quarries, rock crushers, and gravel pits "within five thousand (5,000) feet of" "the nearest property line or boundary of" "a residence, school, licensed daycare facility, park, recreation center, church, retail, commercial, professional or industrial establishment." But quarries in operation before May 20, 2019, are exempt from the location requirement. *See* Grundy Cnty. Bd. of Comm's Res. No. 24-1-22A (amending Res. No. 19-5-20c).[5]

This language regulates the use of land—but it is not an exercise of the County's zoning power. Resolution No. 19-5-118(c) does not divide the County into districts, nor does it have the effect of doing so. *See Fam. Golf of Nashville, Inc. v. Metro. Gov't of Nashville*, 964 S.W.2d 254, 258 (Tenn. Ct. App. 1997) ("Zoning . . . involves the territorial division of land into districts according to the character of the land and buildings, their suitability for particular uses, and the uniformity of these uses." (citation omitted)); *But see Sandy Mush Properties, Inc. v. Rutherford Cnty. ex rel. Bd. of Comm'rs*, 595 S.E.2d 233, 236 (N.C. Ct. App. 2004) (holding that moratorium on "heavy industrial" use "within 2,000 feet of a church, school, residence or other structures" was zoning regulation because it "divided the County into two areas—zones in which heavy industry was allowed and those in which it was not"). Consequently, we conclude that Resolution No. 19-4-118(c) is not tantamount to a zoning regulation. Accordingly, we pretermit whether the Resolution No. 19-5-20c substantially affected Plaintiffs' use of their property. *See SNPCO, Inc.*, 363 S.W.3d at 479 ("Because, by its own terms, Jefferson City's ordinance cannot be characterized as being tantamount to a zoning ordinance, it is not a zoning restriction under the *Cherokee Country Club* test.").

---

[5] Although Plaintiffs have challenged the mode by which Resolution No. 19-5-118c was adopted, they have not challenged its reasonableness.

Plaintiffs also contend that Resolution No. 19-5-20c was void ab initio because Tennessee Code Annotated § 5-1-118(c)(2) prohibits counties from applying their police powers to "those activities, businesses, or uses of property and business occupations and practices that are subject to regulation pursuant to," *inter alia*, the Tennessee Air Quality Act and the Water Quality Control Act of 1977. But the County maintains those statutes have no preclusive effect because they do not address "blasting, drilling and heavy industrial traffic."[6] We agree.

"[L]ocal governments must exercise their delegated power consistently with the delegation statutes from which they derive their power." *421 Corp. v. Metro. Gov't of Nashville & Davidson Cnty.*, 36 S.W.3d 469, 475 (Tenn. Ct. App. 2000) (citing *Henry v. White*, 250 S.W.2d 70, 71 (Tenn. 1952)). Tennessee Code Annotated § 5-1-118(c)(1) permits counties to exercise the powers in § 6-2-201(22) and (23) "by adoption of a resolution by a two-thirds (2/3) vote of their respective legislative bodies." But this authority is subject to an exception:

> The powers granted by § 6-2-201(22) and (23) shall not apply to those activities, businesses, or uses of property and business occupations and practices that are subject to regulation pursuant to title 57, chapters 5 and 6; title 59, chapter 8; title 60, chapter 1; title 68, chapters 201–221; or title 69, chapters 3, 7, 10 and 11.

Tenn. Code Ann. § 5-1-118(c)(2).

Title 57, chapters 5 and 6 apply to the manufacture, distribution, sale, and taxation of beer. *See* Tenn. Code Ann. §§ 57-5-101, 57-6-101. Title 59, chapter 8 regulates coal mining. *See id.* § 59-8-101. Title 60, chapter 1 regulates oil and gas mining. *See* Tenn. Code Ann. § 60-1-101. Title 68, chapter 201 regulates "the air resources of the state . . . through the prevention, abatement and control of air pollution." Tenn. Code Ann. § 68-21-103. Title 69, chapter 3 regulates "the air resources of the state . . . through the prevention, abatement and control of air pollution." Tenn. Code Ann. § 68-21-103. Resolution No. 19-5-20c regulates the location and operation of quarries, rock crushers, and gravel pits.

---

[6] Defendant maintains that it was exercising its authority under Tennessee Code Annotated § 5-1-§ 6-2-201(23) to "[p]rescribe limits within which business occupations and practices liable to be nuisances or detrimental to the health, morals, security or general welfare of the people may lawfully be established, conducted or maintained." Tenn. Code Ann. § 6-2-201. Relying on this court's decision in *Hall v. A.B. Long Quarries, Inc.*, 1990 WL 2020581 (Tenn. Ct. App. 1990), Defendant asserts that the operation of quarry is a "permanent nuisance."

Accordingly, we conclude that Tennessee Code Annotated § 5-1-118(c)(2) does not apply.

## IN CONCLUSION

For the foregoing reasons, we affirm the trial court's summary judgment in favor of Grundy County, and this matter is remanded with costs of appeal assessed against appellants, Tinsley Properties, LLC, and Tinsley Sand & Gravel, LLC.

_____
FRANK G. CLEMENT JR., P.J., M.S.