IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
January 30, 2001 Session

## COUNTY RESIDENTS AGAINST SPEEDWAY HAVOC (C.R.A.S.H.), ET AL. v. WILSON COUNTY COMMISSION, ET AL.

Appeal from the Chancery Court for Wilson County
No. 99059     C. K. Smith, Chancellor

No. M2000-01561-COA-R3-CV - Filed July 26, 2001

Opponents of a proposed motor speedway in Wilson County filed a petition which challenged on numerous grounds the zoning change that made construction of the speedway possible. The trial court dismissed the complaint, finding that the county government had acted in accordance with the applicable laws. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed**

BEN H. CANTRELL, P.J., M.S., delivered the opinion of the court, in which WILLIAM C. KOCH, JR. and WILLIAM B. CAIN, JJ., joined.

Frank M. Fly, Murfreesboro, Tennessee, for the appellants, C.R.A.S.H., and James Nay, John Hurt, and Richard Bradley.

Michael R. Jennings, Lebanon, Tennessee, for the appellees, Wilson County Commission, Wilson County Planning Commission, Wilson County Board of Zoning Appeals, Robert Dedman, Jerry McPeak, and W.J. McCluskey.

Gregory S. Gill and Alan Poindexter, Lebanon, Tennessee, for the appellee, Nashville Speedway U.S.A., Inc.

**OPINION**

**I.**

Nashville Speedway U.S.A., Inc. (Speedway), a subsidiary of a Delaware Corporation, made plans to create a large motor sports complex in southern Wilson County. These plans included a paved "superspeedway" track flanked initially by 50,000 grandstand seats, with overall infrastructure

designed to eventually accommodate 150,000 spectators, as well as several other tracks, each with its own grandstand seating.

When they learned of Speedway's plans, residents of the area formed an organization to oppose the construction of the complex. The organization was named County Residents Against Speedway Havoc, but is better known by its initials, or by the acronym C.R.A.S.H. According to their petition and complaint, the membership of C.R.A.S.H. included approximately 500 residents of Southern Wilson and Northern Rutherford Counties.

Speedway had acquired over 1,100 acres of mostly agriculturally-zoned land for their project. On October 7, 1998, the corporation filed an application with the Wilson County Planning Commission to change the zoning of its land to C-4 Commercial. In support of its application, Speedway submitted the basic plans for the proposed motor sports complex.

The procedure for such a zoning amendment involves proceedings before three county governmental bodies. The Wilson County Planning Commission and the Wilson County Board of Zoning Appeals each approved the application on November 6, 1998. The Wilson County Commission, prior to taking action on the application for rezoning, amended the zoning ordinance to change the required public notice of a proposed zone change from thirty days to fifteen days. The Commission gave notice of its intent to amend the notice requirement on October 15, 1998 and approved the change on November 16, 1998. Then the Commission approved the zone change on December 21, 1998, thus clearing the way for construction of the speedway.

On February 16, 1999, C.R.A.S.H. and three of its individual members filed a pleading in the Wilson County Chancery Court, which was captioned as a Petition for Writ of Certiorari and Complaint for Declaratory Judgment. The Petition/Complaint named as defendants all three Wilson County governing bodies involved in the approval, as well as several individual county officials, and Speedway itself. The plaintiffs alleged that the governmental defendants had violated the plaintiffs' constitutional due process rights, had exceeded their jurisdiction, and had acted illegally, arbitrarily and capriciously.

Among their specific allegations, the petitioners claimed the defendants had violated the Open Meetings Act, that one member of the Wilson County Planning Commission was ineligible to serve on the Commission because he was not a resident of Wilson County, that a motor sports complex was not one of the uses contemplated by the county zoning ordinance under the C-4 classification, and that the site plan submitted by Speedway was defective in numerous respects.

At some point after obtaining approval of its plans, Speedway decided to re-position the location of the racetrack and to add additional parcels to the development. It accordingly submitted a new application for a zoning amendment (which was captioned as Proposed Amendment #425). The amendment was considered at a meeting of the Wilson County Planning Commission on March 30, 1999.

Three individual plaintiffs/C.R.A.S.H. members were present at the meeting, and stated their concerns about noise and about other environmental problems that could arise from the construction of the complex. However, the Planning Commission unanimously recommended that the project be approved. The Wilson County Commission published notice of its intent to consider the zone change on April 1, 1999 and passed the ordinance on April 19, 1999. (The Board of Zoning Appeals approved the site plan on April 16, 1999.) The three plaintiffs were again present at the Commission meeting, and spoke in opposition to Amendment #425. The Commission passed the amendment by voice vote, with two commissioners voting no.

On August 25, 1999, the plaintiffs filed a Motion to Amend Complaint. The proposed amended complaint addressed the actions taken by the governmental defendants in the Spring of 1999, and added several counts to the original petition, all of which involved alleged defects in published notices that preceded the hearings at which Amendment #425 was approved.

A Second Motion to Amend Complaint was filed on September 24, 1999, which added additional counts to the allegations of inadequate notice. After a hearing, the trial court granted the petitioners' first Motion to Amend Complaint, and two of the four counts in the Second Motion to Amend Complaint.

Speedway and C.R.A.S.H. both filed motions for summary judgment. Speedway's memorandum in support of its motion denied any defects in the County's approval of its plans. Speedway also contended that the plaintiffs' claims were time-barred, because they were not filed within sixty days of the governmental actions complained of. The governmental defendants filed a response, in which they argued that they would also be entitled to summary judgment, should Speedway's motion be granted.

The competing motions were heard on February 16, 2000, after which the trial court denied a portion of the plaintiff's Motion for Summary Judgment, and ordered additional briefing on the remaining issues. The court entered a Final Order on May 30, 2000, dismissing the plaintiffs' Motion for Summary Judgment and granting summary judgment to the defendants on all claims. This appeal followed. The only issues pressed on appeal are the ones dealing with the various notices given by the Commission of the proposed changes in the zoning ordinance and the zone change itself.

## II. NOTICE AND DUE PROCESS

The plaintiffs/appellants attack the change in the zoning ordinance reducing the public notice period for a zone change from thirty to fifteen days. They contend that the amendment is invalid because the Wilson County Commission did not give adequate notice for a public hearing on the change.

It is axiomatic that "the right of a county to enact or amend zoning regulations is based upon powers delegated to it by the state legislature through specific enabling acts." *State ex rel.*

*Browning-Ferris Indus. v. Bd. of Commissioners*, 806 S.W.2d 181 (Tenn. Ct. App. 1990). The enabling acts in this state are found at Tenn. Code. Ann. § 13-7-101, et seq. Tenn. Code. Ann. § 13-7-105 sets out the requirements for notice that county legislative bodies must follow before amending their zoning ordinances. The current version of the statute reads in pertinent part,

> (b)(1) . . . before finally adopting any such amendment, the county legislative body shall hold a public hearing thereon, at least fifteen (15) days' notice of the time and place of which shall be given by at least one (1) publication in a newspaper of general circulation in the county. A complete summary of such amendment shall be published at least once in the official newspaper of the county or in a newspaper of general circulation in the county. The summary shall include a statement that a complete copy of the amendment is available and where such copy may be obtained. If the zoning ordinance rezones property, a description of the property that is rezoned shall be included in the summary.

An earlier version of the statute had required at least thirty days prior notice before such an amendment could be adopted. A 1993 Act shortened that period to fifteen days. 1993 Tenn. Pub. Acts, ch. 244.

On October 15, 1998, the following notice appeared in *The Lebanon Democrat*:

### PUBLIC NOTICE

The Wilson County Commission will meet Monday, November 16, 1998 in the Courthouse, Lebanon, Tennessee. The following amendment will be presented to the Wilson County Ordinance, Article 6, Section 6.50.03-last sentence change 30-days to 15-days. The amendment will allow the publication of notice to be 15-days rather than 30-days before being presented to the County Commission. For further or more complete information, you may contact the Building Inspectors Office, 233 E. Gay St., Lebanon, Tennessee.

It appears that the meeting announced by the notice was conducted on the day stated, and that county ordinance 6.50.03 was duly amended to shorten the notice period to fifteen days.

On more than one occasion, we have declared a county ordinance to be void because of notice which did not comply with the enabling act or with the county's own regulations. *See Hutcherson v. Criner*, 11 S.W.3d 126 (Tenn.Ct. App. 1999); *Town of Surgoinsville v. Sandidge*, 866 S.W.2d 553 (Tenn. Ct. App. 1993); *State ex. rel. SCA Chemical Services, Inc. v. Sanidas,* 681 S.W.2d 557 (Tenn. Ct. App. 1984). The appellants argue that the County's notice of October 15, 1998 was defective, thus rendering void the 15 day amendment to the zoning ordinance. If they are correct, then the approval of the Speedway proposal would in all likelihood also be void, because the meeting at which that proposal was adopted was conducted less than 30 days after the notice which announced it.

According to the appellants, the chief defect in the notice of October 15, 1998 is that it referred to a <u>meeting</u> of the County Commission rather than a <u>hearing</u>. They also observe that the notice gave the date of the meeting in question, but not the exact time.

The appellants rely heavily on an unpublished opinion of this court, *Rutherford Creek Planning Comm'n v. Smith*, App. No. 86-282-II, filed Nashville, April 1, 1987, in which we declared a Maury County zoning ordinance void, in part because of a defective notice. We stated in that opinion that "[t]he most obvious infirmity of the 'Zoning Ordinance' is the failure to publish notice of a hearing, and not merely notice of a 'meeting'." We explained that the distinction was important because,

> ". . . a hearing is an occasion when all interested parties are allowed to attend and express their views, whereas a meeting is an occasion when interested parties may attend and observe the deliberation but may not express their views."

However, we also deemed the notice in *Rutherford Creek* to be deficient because (unlike the notice in the case before us) it did not include the substance of the ordinance to be considered, nor the name of a person or office to contact for further information. A case whose facts more closely resemble those in the one before us, and one with greater precedential authority, is *Clapp v. Knox County*, 273 S.W.2d 694 (Tenn. 1954). In that case, the notice identified and described land for which rezoning was proposed, stated that the proposed change was from Residential B to Commercial A, and gave an address where additional information could be obtained. It did not include the term "hearing," but stated that "The following amendment to the Knox County Zoning Regulations will be presented at the next session, regular, special or adjourned of the Quarterly Court of Knox County to be held after thirty (30) days from the date of this notice, October 10, 1953, at the Court House in Knoxville, Tennessee." The meeting was actually held on November 30, 1953, but the exact date, time and location of the meeting was not stated in the notice of October 10.

The plaintiffs in the *Clapp* case challenged the validity of the rezoning that followed the above-quoted notice. Our Supreme Court acknowledged the necessity of proper notice under the zoning ordinance for the valid enactment of any measure, but it upheld the challenged amendment, finding that the notice in question substantially complied with the legal requirements, because it "was not misleading and it gave the necessary information to the interested parties." It also gave them the opportunity to go to the planning office, where they could view a map that would give them a more complete picture of the possible impact of the rezoning on their own interests.

The disputed notice in the present case was, if anything, more specific than the notice in *Clapp*, for it gave the date of the meeting. While it described a procedural change in the ordinance rather than a rezoning, the notice was not misleading, and it conveyed to interested parties the gist of the proposed change as well as a place to obtain more complete information. We do not believe that the fact that it referenced a "meeting" rather than a "hearing" destroyed its utility.

We also note that the cases where defective notice has led us to declare that a change in the zoning ordinance had been rendered void can be easily distinguished from the one before us. In *Hutcherson v. Criner*, for example, the notice was misleading. The challenged amendment involved a landfill, but there was no mention of a landfill in the notice. In the *Surgoinsville* case, the notice was published only eleven days before the meeting at which the amendment was adopted. In *Sanidas*, the notice was timely, but the amendment considered at the meeting was different from the one announced in the notice, and the plaintiff had not attended the meeting because the hearing as advertised did not affect his rights.

After considering these cases and others, we hold that the notice provided by the Wilson County Commission on October 15, 1998 substantially complied with the requirements of due process, of Tenn. Code. Ann. § 13-7-105 and of Section 6.50.03 of the Wilson County Zoning Ordinance. Therefore the change of the notice period from thirty to fifteen days was a valid enactment of the Wilson County Commission.

### III.

On March 26, 1999, another notice was published in *The Lebanon Democrat*, which read in part:

### PUBLIC NOTICE

The Wilson County Commission will meet Monday, April 19, 1999 at which time a public hearing will be held at 7 p.m or thereafter concerning the following amendment to the Wilson County Zoning Ordinance.

There followed an extremely detailed recitation of proposed changes in the ordinance designed to accommodate the second Speedway proposal, covering almost two full columns in the newspaper. The last line of the notice states that "for further or more information, you may contact the office of the Wilson County Building Inspector." As we stated above, the Speedway proposal received its final approval at the April 19 meeting.

The appellants also attack this notice, but the main thrust of their argument is that it does not provide a thirty day notice. Since we have held that the ordinance had been changed to provide for a fifteen day notice, most of the appellants' argument has been deflated. We think that the notice substantially complies with the statute and that the zone change on April 19, 1999 is a valid change.

### IV.

In their reply brief, the plaintiffs raise the question of whether a speedway is one of the uses permitted by C-4 zoning. They note that at the time they filed their initial complaint, Section 5.33.02 of the Wilson County Ordinance stated that a C-4 Classification permits "a range of retail, commercial and office uses," including "offices, commercial services, commercial sales, light

distribution centers, and utility and or government uses," but said nothing to specifically indicate that a speedway was a contemplated use under that zoning.

On October 19, 1999, that section was amended to add the following language: "Permitted uses shall, additionally, include amusement parks, theme parks, outdoor arenas, motor sports complexes and other similar entertainment use." This language was included verbatim in the notice of March 26, 1999, discussed above.

Plaintiffs argue that this amendment amounts to a concession that the original C-4 ordinance did not encompass a motor sports complex. If we concede, arguendo, that this is true, the point is nonetheless moot. The Wilson County Commission approved the change to the definition of C-4 zoning, the rezoning of Speedway's land to C-4, and the site plan for that land at the meeting of April 19, 1999. The prior language of Section 5.33.02 does not affect the validity of the Commission's actions.

## V.

Since we have decided that the trial court acted properly on the merits of the questions before it, we will not address the appellee's contention that this action was not filed within the applicable statute of limitations. The order of the trial court is affirmed. Remand this cause to the Chancery Court of Wilson County for further proceedings consistent with this opinion. Tax the costs on appeal to the appellants, C.R.A.S.H., et al.

_____
BEN H. CANTRELL, PRESIDING JUDGE, M.S.