WEST ESSEX BUILDING AND LOAN ASSOCIATION AND FERLAUTE DRESS MANUFACTURING CO., PROSECUTORS, v. BOROUGH OF CALDWELL, A MUNICIPAL CORPORATION OF THE COUNTY OF ESSEX, RESPONDENT.

Submitted October 13, 1933—Decided April 4, 1934.

Before BROGAN, CHIEF JUSTICE, and Justices TRENCHARD and HEHER.

For the prosecutors, *Thomas Brunetto.*

For the respondent, *Milton M. Unger.*

The opinion of the court was delivered by

HEHER, J.   These writs of *certiorari* bring up for review a zoning ordinance passed at a meeting of the council of respondent borough, held on October 3d, 1921, and proceedings had upon complaints charging violations thereof by prosecutors.   The proceedings under the three writs were consolidated.

One of the writs, allowed to prosecutors jointly, brings up the ordinance, "together with all things touching and concerning" its "passage, approval and enactment."   Another, allowed to the West Essex Building and Loan Association, requires the return of the complaints, process and evidence in two separate proceedings instituted before the recorder of respondent borough, based upon that prosecutor's alleged violation (1) of section 3 A of the ordinance, in permitting the building and premises in question to be used for manufacturing purposes; and (2) of section 11 A, in permitting the use of the building without first having obtained a certificate of occupancy, as therein provided.   The third writ, allowed to the Ferlaute Company, directs the certification of the complaints, process and evidence in two separate proceedings before the borough recorder, based upon alleged violations of like character.

The insistence of the prosecutor is that the ordinance is invalid.   The grounds of attack are:   (1) It was not submitted in writing at a regular meeting of the borough council; (2) it was not passed at a subsequent regular meeting after being submitted in writing at a regular meeting of that body; (3) it was not read in its final form at a meeting of the

council held at least one week prior to its final passage; (4) it was not published in a newspaper having circulation in the county of Essex, after its introduction, and before passage, with a notice of the time and place when and where it would be considered for final passage; (5) the council did not afford persons interested an opportunity to be heard thereon before final passage; (6) council did not continue or adjourn, by proper resolution, consideration of the ordinance to the meeting of October 3d, 1921, when it was passed; (7) the ordinance was not submitted to the mayor for his approval or veto; (8) it was not approved by the mayor after final passage; (9) it was not passed by the borough council over the mayor's veto; and (10) it was not recorded in full by the borough clerk in a book kept by him for that purpose.

Respondent contends *in limine* that the writ should be dismissed for laches. Ordinarily, where a prosecutor, as a citizen and taxpayer, seeks by *certiorari* to review a municipal ordinance, and his status as such has not been attacked by proofs or other proceedings prior to argument on final hearing, his qualifications are beyond attack. *Jordon* v. *Dumont,* 105 *N. J. L.* 197. But where the attack upon the ordinance relates merely to the procedural steps connected with its introduction and passage, and laches clearly appears, the writ will be dismissed. Public policy forbids an attack based upon informalities and irregularities in the procedure which led to the adoption of the ordinance, when it has been accepted as a valid enactment for a long period of time, and property owners affected by it have conformed to its provisions, and have fixed their status accordingly. *Ninth Street Improvement Co.* v. *Ocean City,* 90 *Id.* 106; *Budd* v. *Camden,* 69 *Id.* 193; *Weissinger* v. *Mayor, &c.,* of *Teaneck,* 10 *N. J. Mis. R.* 1093. In *State* v. *Hudson City,* 29 *N. J. L.* 115, the apposite rule is stated as follows: "The granting of a *certiorari* in cases of public interest is a matter of discretion; and after the party in interest has slept long over his supposed wrong the court will not grant him relief. To relieve him would do much injury to others, and he has no ground of complaint if the opportunity is not given

to him. After a writ of *certiorari* has been allowed, if on the hearing the like circumstances appear, the court may dismiss the writ as improvidently granted, or refuse the relief sought by it."

While most of the grounds advanced by prosecutor relate to matters of procedure merely, there is one that is not in that category. It is fundamental in character, and seems to be well-grounded. It challenges the validity of the ordinance because it does not appear that, after its passage, it was (1) approved by the mayor; or (2) not returned by the mayor to the council within five days after its receipt; or (3) passed over the mayor's veto.

The mere passage of the ordinance by council was, of course, not sufficient. Section 27 of the act relating to boroughs (1 *Comp. Stat., p.* 238), ordains that every ordinance passed by the council "shall, within five days after the passage thereof (Sundays excepted), be presented to the mayor," who shall, if he approves it, sign and file it with the borough clerk within five days after its receipt by him, or, in the event of his disapproval, return it to the clerk, within the same time, with his objections stated in writing, in which event the ordinance shall take effect only after the council (two-thirds of its members concurring) shall pass it over the veto. The failure of the mayor to return the ordinance, within five days after he receives it, is the equivalent of approval. Approval of the ordinance, in one of the statutory modes, was essential to its validity.

The return to the first-mentioned writ shows the passage of the ordinance by the council, but is silent as to its presentation to or action thereon by the mayor, although it is therein certified that it includes "all things touching and concerning the passing, approving and enacting of the said ordinance." The clerk's minutes do not show that the ordinance was presented to the mayor. Respondent attempted, in vain, to prove, by the testimony of borough officers, that the ordinance actually took effect. The proofs lead irresistibly to the conclusion that the ordinance was not presented to the mayor. Several members of the council testified that they did not

know whether this course was taken. The clerk testified that he did not know "what was done with the original ordinance" after final passage by the council. He stated that he had "no recollection of having" presented it to the mayor for his approval or veto. And the conclusion is inescapable that he did not. When asked if it was his general practice to deliver to the mayor, for action on his part, an ordinance passed by the council, he replied: "That was never done." He continued: "My recollection is that I did not make a practice of presenting ordinances to the mayor for the reason he had full knowledge of their consideration, their introduction and passage. If he failed to file a veto within the five days—I think it was after the passage of the ordinance—and that was done in most cases—it automatically became an ordinance and followed the usual manner in its legal procedures. Q. The answer that you have just given then, is a statement of the usual practice during the years that you were borough clerk with respect to the ordinances adopted by the council? A. I would in at least three-fourths of the ordinances that were introduced and passed. The matter of the mayor formally signing it was not observed. It became an ordinance through his agreement and acquiescence and his knowledge of the proceedings leading up to that ordinance unless he was interested in the passage of the ordinance and filed a veto, it was always assumed that his action was favorable to the introduction." The mayor was not called as a witness, and the failure is not excused.

There is an utter absence of evidence that the ordinance was approved by the mayor, and, concededly, it was not passed over his veto. The ordinance was not produced. It could not be found. It was not in the "ordinance book wherein the original ordinances were recorded and signed by the mayor." Moreover, it was the practice to have the mayor signify his approval on the minutes kept by the clerk, but this was not done in the instant case. The clerk testified that he did not see the mayor's approval endorsed on the ordinance at any time after its passage. It therefore cannot be determined whether the mayor received the ordinance,

and signified his approval by endorsement thereon, or failed to return it to the council within the statutory period. Consequently, there is no basis for a finding that the ordinance received the approval of the mayor, or became a valid enactment by reason of his failure to return it to the council within the required time. There being no evidence of the presentation to the mayor of the ordinance after its passage by the council, no presumption arises that it became effective by reason of the mayor's non-action. And laches manifestly cannot give vitality to an ordinance passed by the council that, for the reasons stated, never came into legal being.

The ordinance will therefore be set aside, and the complaints dismissed, with costs.