IN THE SUPREME COURT OF TENNESSEE
AT NASHVILLE
October 5, 2006 Session

## STEVEN A. EDWARDS ET AL. v. NANCY ALLEN ET AL.

**Appeal by Permission from the Court of Appeals, Middle Section
Chancery Court for Rutherford County
No. 036806    Robert E. Corlew, III, Chancellor**

_____

**No. M2004-01944-SC-R11-CV - Filed on March 2, 2007**

_____

The Plaintiffs, who own property adjacent to a shooting range, sought declaratory relief from the Defendant property owners and leaseholders of the range. Rutherford County, whose board of commission had passed a resolution to reclassify the property in 1992 to permit usage as a range, was joined as a Defendant. The chancellor ruled that the action was barred by the statute of limitations and granted motions to dismiss filed by each of the Defendants. The Court of Appeals reversed, holding that the county resolution reclassifying the property was void. We granted this appeal to consider whether the reclassification qualified as a rezoning amendment; if so, whether the deviation by the Rutherford County legislative body from the issue considered by its planning commission subjected the ordinance to a declaration of void ab initio; and, finally, whether the record establishes circumstances which might preclude the Plaintiffs from a remedy. Because the reclassification qualified as a zoning amendment, the deviation by the county from the proposal before the planning commission was substantial, and because there are no circumstances in the record which might preclude the Plaintiffs relief, the judgment of the Court of Appeals is affirmed, and the cause is remanded to the chancery court.

**Tenn. R. App. P. 11 Appeal by Permission; Judgment of the Court of Appeals Affirmed;
Case Remanded.**

GARY R. WADE, J., delivered the opinion of the Court, in which WILLIAM M. BARKER, C.J., JANICE M. HOLDER and CORNELIA A. CLARK, JJ., and ADOLPHO A. BIRCH, JR., SP. J., joined.

D. Randall Mantooth and Mark W. Honeycutt, II, Nashville, Tennessee, for appellant, Nancy Allen, Rutherford County Executive and Granville Sumner R. Bouldin, Jr., Murfreesboro, Tennessee, for the appellants, Tommy E. Jackson and Susanne Jackson.

Frank M. Fly and Kerry Knox, Murfreesboro, Tennessee, for appellees, Steven A. Edwards, Sally Edwards, Fran Lovell, Tonia Nadeau, and JoAnne M. Batey.

## OPINION

## I. Factual and Procedural Background

There was no transcript of the hearing on the motions to dismiss. The pleadings and supporting documentation provide the factual and procedural background, which is largely undisputed. The Defendants, Tommy G. Jackson and his wife, Susanne, are owners of 108.1 acres of land located at 8890 Big Springs Road in Rutherford County. The Plaintiffs, Steven A. Edwards, Sally Edwards, Fran Lovell, Tonia Nadeau, and JoAnne M. Batey, are owners of neighboring property. In 1992, the Jackson property was zoned "Residential 20" under the Rutherford County Zoning Resolution. On October 2 of that year, the Jacksons filled out a two-page application form with the Rutherford County Regional Planning Commission seeking permission to use a portion of their property as a shooting range. They sought approval for "one skeet field and one trap field, in future possibly more skeet fields and trap fields." The content of the application specifies that the Jacksons intended to dedicate ten acres of the property to the range immediately and planned no growth for a ten-year period. The Jacksons did not indicate whether they had any desire to increase the size of the range after that period of time. The notation "R-20 to S-7997," in apparent reference to the existing zoning classification and that sought by the application, was hand-written at the bottom of the form.

Eight days after the filing, the Rutherford County Regional Planning Commission published a "Legal Notice of Public Hearing" in The Daily News Journal of Murfreesboro regarding "[a] request submitted by Tommy Jackson to reclassify a ten acre parcel from R-20 to Service 7997 to allow a skeet and trap field." The property was described as "located on Big Springs Road as referenced by Tax Map 173, Parcel No. 16.02, as recorded in [D]eed [B]ook 243, page 170 in the Rutherford County Register of Deed[s'] office." The notice included an announcement of a public hearing before the Rutherford County Board of Commission.

A regular meeting of the Rutherford County Regional Planning Commission was held prior to the public hearing. Several neighboring property owners voiced opposition to the Jacksons' request for reclassification. The minutes of the October 19, 1992, meeting provide, in pertinent part, as follows:

> Location: Big Springs Road, Tax Map 173, Parcel Number 16.02. Mr. Jackson requested reclassification of a 10 acre parcel from Residential 20 to Service 7997 to allow skeet and trap fields.
>
> Mr. Jackson stated that the skeet and trap fields will be a private club. He said that [there] will be no alcoholic beverages on the property. He stated that up to five members would be shooting at one time and the rest would wait at the clubhouse. The operating hours would be from 10 a.m. to 7 p.m. on Monday through Saturday and from 12:30 p.m. to 7 p.m. on Sundays. They plan to have no lighting.

2

. . . .

During the public hearing, three neighboring property owners expressed a variety of concerns about the noise. Two individuals spoke in favor of the operation. The eleven planning commissioners in attendance unanimously approved the application subject to the conditions that there be no lighting, no alcoholic beverages, and no shooting after 7 p.m.

While the agenda of the Rutherford County Board of Commission meeting for November 9, 1992, also included a public hearing on the Jackson rezoning request, it appears that no one spoke in opposition to the request. Following the public hearing, however, and for reasons apparently unknown to the parties, the board of commission adopted a resolution prepared by the executive director of the planning commission which included a description of ninety acres of the Jacksons' land, rather than the ten acres described on the application and recommended by the planning commission. The body of the resolution, which acknowledged the public hearing and the planning commission actions, provided, in part, as follows:

> The Zoning Map of Rutherford County be amended by reclassifying from Residential 20 to Service 7997 as referenced by Tax Map 173, Parcel Number 16.02, and starting from a pin in Beginning at a pin in Big Springs Road S 1° 34 40 E 795.8 to a pin S 15° 13 20 W 342.8 to a pin by a 18 Hickory S 23° 4 31 W 321.4 to a pin S 6° 15 W 537.2 to a pin S 84° 7 E 1071.4 to a pin S 82° 49 E 126.15 to a pin N 11° 40 72 W 2139.72 to a pin N 87° 7 W 207.45 to a pin N 86° 43 W 845.65 containing 90 acres more or less and hereby established upon Zoning Map 173 on file as reclassification request A-286 at the Rutherford County Planning Department. The reclassification is approved with the following conditions: no artificial lighting, alcoholic beverages, or shooting after 7 p.m.

(Emphasis added).

From 1992 to 1999, the Jacksons operated a shooting range on ten acres of their property. They then leased the shooting range to the Defendant, Alan Loveless, who conducted business as Big Springs Clay Target Sports ("Loveless"). From 1999 to 2001, Loveless continued to operate the range on the original ten-acre site. Later in 2001, however, he built shooting platforms extending beyond the initial boundaries of the business. When the Plaintiff, Steven Edwards, inquired about the expansion, Aaron Holmes, Rutherford County's Planner, confirmed that the range was limited to ten acres. Several months later, however, Holmes notified Edwards that the county records indicated that ninety acres had been rezoned. Loveless then initiated a full scale expansion of the gun range operation.

## A. Action in the Trial Court

In 2003, the Plaintiffs, all of whom own property near the Jackson tract, filed this declaratory judgment action in an effort to determine the propriety of the expansion. The Defendants include

Loveless, the Jacksons, and Nancy Allen, who, as Mayor of Rutherford County, was joined in an official capacity. The Plaintiffs alleged, among other things, that the 1992 reclassification violated the Rutherford County Zoning Resolution and that the 1992 notice of hearing violated the requirements of Tennessee Code Annotated section 13-7-105.

The Defendants filed motions to dismiss pursuant to Rule 12.02, Tennessee Rules of Civil Procedure, claiming protection by the sixty-day statute of limitations under Tennessee Code Annotated sections 27-9-101, -102 (2000), the one-year statute of limitations under Tennessee Code Annotated section 28-3-104 (2000), and the ten-year statute of limitations contained in Tennessee Code Annotated section 28-3-110 (2000). The Defendants also maintained that their reliance on the validity of the ordinance, coupled with the passage of time, qualified as a defense to an attack based upon procedural deficiencies. The Defendants further contended that the Plaintiffs had notice that Loveless was using more than ten acres as early as 2000 and stressed that the Plaintiffs had delayed filing suit for well over a year after the county planner informed them in 2002 that ninety acres of the property, rather than ten, had been rezoned. In a "catch-all" paragraph in Defendant Allen's motion, the following additional defenses were asserted: (1) failure to join indispensable parties, (2) acquiescence, (3) waiver, (4) estoppel, (5) laches, (6) failure to file an administrative appeal, (7) failure to mitigate, (8) lack of "special injury," and (9) coming to a nuisance. In their motions to dismiss, the Jacksons and Loveless adopted and incorporated Allen's motion.

In response, the Plaintiffs insisted that the statute of limitations was tolled until they received actual notice of the action by the county board and contended that their suit was not barred even though it was filed more than ten years after the reclassification. The Plaintiffs argued that they did not know and could not have reasonably discovered that the board of commission had rezoned ninety acres instead of the ten-acre tract until Loveless initiated his plan to expand the size of the gun range beyond the original ten-acre parcel and the county planner expressed the view that the expansion was lawful. The Plaintiffs asserted that they had reasonably relied upon the newspaper notice which provided that only ten acres of the Jacksons' 108 acres would be used for the gun range. In addition, the Plaintiffs contended that no statute of limitations can prevent them from seeking a declaratory judgment as to the validity of the zoning amendment, which because of its ineffective notice, is not only invalid now but was invalid from its inception.

After the hearing on the motions to dismiss, the chancellor concluded that the suit was filed after the ten-year statute of limitations, the longest possible period as set out in Tennessee Code Annotated section 28-3-110 (2000). In consequence and without specifically determining which period of limitations applied, the chancellor ruled that the time within which to file the suit had not been tolled "under the terms of any discovery rule" because "the decision of the County body was in fact the subject of public record." The motions to dismiss were granted and the board of commission was excused from compliance with Tennessee Code Annotated section 13-7-105, which establishes the procedure by which zoning ordinances must be amended.

**B. Ruling by the Court of Appeals**

4

On direct appeal, the Court of Appeals reversed the chancellor's ruling, holding that the 1992 zoning resolution was void ab initio because the board of commission failed to adhere to the procedural requirements of Tennessee Code Annotated section 13-7-105. The court ruled the declaratory judgment action was not subject to any statute of limitation, concluding that "the passage of time is meaningless." Because there was a failure to meet the mandatory statutory notice requirements for the entire ninety acres and because the departure from the ten-acre request was so substantial, the Court of Appeals characterized the resolution by the board of commission, absent prior review by the planning commission, as an ultra vires exercise of zoning power. The Court of Appeals remanded to the trial court, however, describing its determination as within the context of a Tennessee Rules of Civil Procedure 12.02(6) motion only and without prejudice to the rights of any party to further develop the record after remand.

Our Court of Appeals, which also concluded that the 1992 resolution qualified as a rezoning or reclassification amending the zoning map, relied in great measure on DeLucia v. Town of Jamestown, 265 A.2d 636 (R.I. 1970), where the Supreme Court of Rhode Island ruled that

> if the local legislature is free to make substantial alterations in either the proposed map or ordinance without again giving notice and conducting a public hearing, the holding of such hearing becomes meaningless. Having heretofore held . . . that such public notice and hearing are conditions precedent to the local legislature's jurisdiction to take final action, we conclude that the alterations to the proposed map and ordinance in the instant case, if substantial, were made in excess of the Jamestown Town Council's jurisdiction.

Id. at 640 (emphasis added).

The Jacksons and Mayor Allen, not joined in the application for permission to appeal by Loveless, contend that the "Rutherford County Land Use Application Form" was not a request for rezoning but sought instead only a special exception or conditional use permit to allow skeet and trap shooting. These Defendants argue that prior review by the planning commission is not required for such a use, as a "special exception" denotes a species of administrative permission which allows an owner to put his property to a use which zoning regulations expressly permit under certain conditions specified in such regulations themselves. See 82 Am. Jur. 2d Zoning and Planning § 225 (1976). The "Service 7997" classification in Rutherford County allows for "miscellaneous amusement and recreation services, membership sports and recreation clubs." The Defendants assert that the special exception or conditional use permit process qualifies as an administrative function and the usual safeguards afforded prior to the amendment of a zoning ordinance are unnecessary. In the alternative, the Defendants contend that the ruling of the Court of Appeals that a procedurally defective reclassification is void from its inception could create chaos for counties which have failed to follow with precision the statutory procedure when adopting zoning changes.

## II. Discussion
### A. Standard of Review

A Rule 12.02(6) motion to dismiss seeks only to determine whether the pleadings state a claim upon which relief can be granted. Such a motion challenges the legal sufficiency of the complaint, not the strength of the Plaintiffs' proof. See Bell ex rel. Snyder v. Icard, Merrill, Cullis, Timm, Furen & Ginsburg, P.A., 986 S.W.2d 550, 554 (Tenn. 1999). The motion admits the truth of all relevant and material averments contained in the complaint, but asserts that such facts do not constitute a cause of action. Stein v. Davidson Hotel Co., 945 S.W.2d 714, 716 (Tenn. 1997). In considering a motion to dismiss, the Court is required to take the relevant and material factual allegations in the complaint as true and to construe liberally all allegations in favor of the Plaintiffs. Id.; Pursell v. First Am. Nat'l Bank, 937 S.W.2d 838, 840 (Tenn. 1996); Pemberton v. Am. Distilled Spirits Co., 664 S.W.2d 690, 691 (Tenn. 1984). Additionally, this Court's review of a trial court's determinations on issues of law is de novo, without any presumption of correctness. Frye v. Blue Ridge Neuroscience Ctr., P.C., 70 S.W.3d 710, 712 (Tenn. 2002); Bowden v. Ward, 27 S.W.3d 913, 916 (Tenn. 2000); Ganzevoort v. Russell, 949 S.W.2d 293, 296 (Tenn. 1997).

## B. Relevant Code Provisions

Part 1 of Chapter 7 of Tennessee Code Annotated pertains to county zoning and, in 1992, was codified in sections 13-7-101 through -116. A county acquires its power to enact zoning regulations from the state. Cherokee Country Club, Inc. v. City of Knoxville, 152 S.W.3d 466, 471 (Tenn. 2004); State ex rel. Browning-Ferris Indus. of Tenn., Inc. v. Bd. of Comm'rs of Knox County, Tenn., 806 S.W.2d 181, 187 (Tenn. Ct. App. 1990) (citing Henry v. White, 250 S.W.2d 70, 72 (Tenn. 1952) and State ex rel. Lightman v. City of Nashville, 60 S.W.2d 161, 162 (Tenn. 1933)). Tennessee Code Annotated section 13-7-101, entitled "Grant of Zoning Power," provides in part as follows: "The county legislative body of any county is empowered, in accordance with the conditions and the procedure specified in this part, to regulate . . . the uses of land for trade, industry, residence, recreation, agriculture, forestry, soil conservation, water supply conservation or other purposes. . . ." Tenn. Code Ann. § 13-7-101(a)(1) (1992). The pertinent provision of Tennessee Code Annotated section 13-7-102 provides that "the county legislative body may, by ordinance, . . . divide the territory of the county which lies . . . outside of municipal corporations into districts . . . and within such districts may regulate the erection, construction, reconstruction, alteration and uses of buildings and structures and the uses of land." Id. § 13-7-102 (1992).

Although the county legislative body has the power to amend zoning ordinances, the amendment must first be submitted to the regional planning commission. Id. (1992). Without prior submission, the amendment is of no effect. Id. The planning commission's authority is limited to approval, disapproval, or suggestions, and if the planning commission disapproves, the proposal may nevertheless be considered and approved by the county legislative body. Id.

Inasmuch as zoning laws are in derogation of the common law and operate to deprive a property owner of a use of land that would otherwise be lawful, such laws are to be strictly construed in favor of the property owner. State ex rel. Wright v. City of Oak Hill, 321 S.W.2d 557, 559 (Tenn. 1959). "Legislative classification in a zoning law, ordinance or resolution is valid if any possible

reason can be conceived to justify it." State ex rel. SCA Chem. Waste Servs., Inc. v. Konigsberg, 636 S.W.2d 430, 437 (Tenn. 1982). As we found in McCallen v. City of Memphis, "the court's primary resolve is to refrain from substituting its judgment for that of the local governmental body. An action will be invalidated only if it constitutes an abuse of discretion. If 'any possible reason' exists justifying the action, it will be upheld." 786 S.W.2d 633, 641 (Tenn. 1990).

There are two reported decisions from the Court of Appeals that are pertinent to the issues before us. First, in State ex rel. SCA Chem. Servs., Inc. v. Sanidas, 681 S.W.2d 557 (Tenn. Ct. App. 1984), a matter in which an amendment to an ordinance was neither submitted to the Shelby County Land Use Control Board nor subjected to a public hearing prior to its passage, the Court of Appeals held that the amendment to the zoning ordinance was "void and invalid" and observed as follows:

"Procedural requirements are considered by the courts to be safeguards against arbitrary exercise of power. Failure to comply with such procedural requirements has been regarded not only as an ultra vires act on the part of municipal legislators, but also as a denial of due process of law. Indeed, a statute or ordinance which fails to require legislative notice and a hearing prior to the enactment of a zoning ordinance may be regarded as invalid for failure to require procedure which comports with due process of law."

Id. at 564 (quoting 1 Anderson, American Law of Zoning § 4.03 (1976)).

In Hutcherson v. Criner, the Tennessee Court of Appeals considered an amendment to a zoning ordinance that was enacted following a published notice that was "misleading and failed to give the necessary information to the interested parties." 11 S.W.3d 126, 135 (Tenn. Ct. App. 1999). In holding the amendment invalid, the Court of Appeals relied in great measure on its prior holding in Sanidas:

"The procedural steps which the legislatures have put in place in the form of enabling statutes governing the enactment of zoning ordinances usually are regarded as mandatory, and a failure substantially to comply with such requirements renders . . . the zoning ordinance invalid."

Id. at 134 (quoting 83 Am. Jur. 2d Zoning and Planning § 581 (1992)).

### C. Special Exception or Conditional Use Permit v. Zoning

The Rutherford County Zoning Resolution divides the unincorporated lands of the county into five classes of districts: Residential, Commercial, Industrial, Flood Hazard, and Mobile Home Park. As pointed out by the Plaintiffs, "Service 7997" is not a zoning classification. The term is derived from the Standard Industrial Classification Manual, "which is referenced in the Rutherford County Zoning Resolution but is used only to set out land uses that the Board of Zoning Appeals can consider in connection with conditional use permit applications." Crockett v. Rutherford County,

No. M2000-01405-COA-R3-CV, 2002 WL 1677725, at *2 (Tenn. Ct. App. July 25, 2002).

In Cherokee Country Club, this Court stated that "[t]he precise contours of determining when an ordinance is a zoning ordinance, and thus subject to statutory zoning requirements . . . are difficult to draw or define." 152 S.W.3d at 472 (citing 1 Edward H. Ziegler, Jr., et al., Rathkopf's The Law of Zoning & Planning § 1.02 (4th ed. 2003)). "[D]etermining whether a zoning ordinance exists requires 'a consideration of the substance of its provision and terms, and its relation to the general plan of zoning . . . .'" Id. (quoting 8 McQuillin, The Law of Municipal Corporations § 25.53 (3rd ed. 2004)). The Ziegler treatise, on which this Court relied in Cherokee Country Club, explains further that "'[w]here the particular restriction constitutes, or would constitute, a substantial interference with land use, the [governmental body] ordinarily must treat it as a zoning regulation and must follow statutory or character zoning procedures, even though other authority for the particular type of ordinance has been granted.'" See Id. (quoting 1 Ziegler, supra § 1.02(3)) (emphasis added).

In Crockett, our Court of Appeals considered a similar zoning issue involving Rutherford County. The board of commission rezoned a parcel of land from "Residential R-20" to "Communications 4899." 2002 WL 1677725, at *2. On appeal from the ruling of the trial court, the Court of Appeals observed as follows:

> "Communication 4899" is not a zoning classification at all. The "Communication 4899" classification . . . is used only to set out land uses that the Board of Zoning Appeals can consider in connection with conditional use permit applications. The [Standard Industrial Classification] Manual lists classes of economic activities permitted within various zoned districts. This "Communication 4899" classification is the only such zoning district in Rutherford County . . . .

Id. In Crockett, the Court of Appeals addressed the issue as a zoning question, not a special exception or conditional use permit issue. It also observed that requests for special exception or conditional use permits are to be taken before the board of zoning appeals, a body authorized by Tennessee Code Annotated section 13-7-107 for the purpose of making "special exceptions to the terms of the zoning regulations in harmony with their general purpose and intent." See Tenn. Code Ann. § 13-7-107. That the request for reclassification in this case was presented to the Rutherford County Regional Planning Commission rather than a board of zoning appeals supports the conclusion that the Jacksons had sought a rezoning, not a special exception or conditional use permit. Further, the request to allow a for-profit shooting range on property zoned as Residential 20 for single family dwellings "substantially affects" the use of the land, the test this Court specifically approved in Cherokee Country Club. Cherokee Country Club, 152 S.W.3d at 473. Regardless of whether the Jacksons meant to apply for a special exception or conditional use permit or submitted a request for a new zoning classification, the resolution by the Rutherford County Board of Commission qualified as an amendment to the county zoning map. It is our view, therefore, that the procedural requirements of Tennessee Code Annotated section 13-7-105 applied.

8

As indicated, that statute prescribes the method by which a zoning ordinance may be amended. In 1992, the public notice requirements for rezoning proposals were set forth as follows:

**13-7-105. Amendments of zoning ordinance provisions - Procedure. -** (a) The county legislative body may from time to time, amend the number, shape, boundary, area or any regulation of or within any district or districts or any other provision of any zoning ordinance; but <u>any such amendment shall not be made or become effective unless the same be first submitted for approval, disapproval or suggestions to the regional planning commission</u> of the region in which the territory covered by the ordinance is located, and, if such regional planning commission disapproves within thirty (30) days after such submission, such amendment shall require the favorable vote of a majority of the entire membership of the county legislative body.

(b)(1) . . . before finally adopting any [proposed zoning] amendment, the county legislative body shall hold a public hearing thereon, at least thirty (30) days' notice of the time and place of which shall be given by at least one (1) publication in a newspaper of general circulation in the county. Any such amendment shall be published at least once in the official newspaper of the county or in a newspaper of general circulation in the county.

Tenn. Code Ann. § 13-7-105 (1992).

In <u>Westland West Cmty. Ass'n v. Knox County</u>, 948 S.W.2d 281, 282 (Tenn. 1997), this Court recognized that a county legislative body is vested with the statutory power to amend zoning ordinances. <u>See also</u> Tenn. Code Ann. § 13-7-105(a). We ruled, however, that a proposed zoning amendment "shall neither be granted nor become effective unless the proposed amendment is first submitted to the regional planning commission." <u>Westland West</u>, 948 S.W.2d at 282. When "a proposed zoning amendment is not first presented to the regional planning commission, the county [legislative body] is devoid of jurisdiction to act upon the proposal." <u>Id.</u> at 283. In that case, this Court observed that

[w]hether <u>the revised proposal must then be resubmitted </u>to the regional planning commission is contingent upon: (1) the gravity of the revision(s), and (2) whether the board's recommendations would have been altered by the revision(s). <u>If the revision is inconsequential and would not have altered the board's recommendation, resubmission is not mandated. If, however, the revision(s) substantially alters the initial proposal, the proper inquiry is: (1) whether there is a detrimental impact on those who would oppose the proposal; and (2) whether the board's recommendations would have been altered by the revision(s).</u> An affirmative answer to either question mandates resubmission.

<u>Id.</u> (emphasis added) (citations omitted).

9

The Defendants, while acknowledging that the revision from ten to ninety acres may indeed qualify as "substantial," nevertheless assert that the determination depends upon the facts and cannot be determined on appeal as a matter of law. In this case, of course, there has been no trial. The hearing on the motions for dismissal was not transcribed. Consequently, the evidentiary record is limited. This does not mean, however, that a remand on this issue is always necessary.

In Wilgus v. City of Murfreesboro, for example, the Court of Appeals limited its examination to the face of the ordinance. 532 S.W.2d 50, 54 (Tenn. Ct. App. 1975). The issue involved the rezoning of certain land from residential to commercial. The city zoning commission recommended the change, and the rezoning request was forwarded to the Murfreesboro City Council for final approval. Id. at 52. The rezoning request was addressed at three separate city council meetings. Prior to the final reading, the council altered the proposal to include a "buffer zone" on a portion of the land nearest a residential area. Id. Although the trial court found that the addition of the buffer zone required reconsideration by the city zoning commission prior to any final action by the city council, the Court of Appeals reversed, holding that the change was not substantial and did not, therefore, require resubmission to the planning body because it benefitted those who challenged the rezoning and was not likely to have affected the planning commission's recommendations. Id. at 54. The intermediate appellate court emphasized as follows:

> If a proposed zoning ordinance is amended so substantially that a new proposal is, in effect, created we think it clear that both the state statute and municipal code provision require it to be submitted to the planning commission for its consideration before the municipal legislative body may finally act upon it. . . .
>
> The purpose of requiring submission to the planning commission is to give the legislative body the advantage of the commission's expertise on land use planning with respect to the proposal that it must either adopt or reject. . . . The test [for resubmission] is whether the revision is so substantial as to create a strong probability that the commission's recommendation would have been affected by the revision. If the change is both inconsequential and produces no detrimental effects to those who would oppose it, then the revised proposal is not required to be resubmitted.

Id. at 53-54 (emphasis added).

Similarly, in the case before us, the Court of Appeals concluded that it could not reasonably be found that the deviation was insubstantial. We must agree. In our view, the unexplained, nine-fold alteration to the "rezoning request" was so substantial that there should have been a resubmission of the proposed amendment to the planning commission. See State ex rel. Browning-

Ferris Indus., 806 S.W.2d at 188.[1] When the planning commission's recommendation would likely have been altered by the revision or those opposed to the change are detrimentally impacted, relief from the reclassification is warranted. See Westland West, 948 S.W.2d at 283. We hold, therefore, that the county legislative body had no jurisdiction to act on the proposed zoning amendment. Id. (finding amendments to Knox County Zoning Resolution to be "null and void and of no effect"). The Rutherford County Board of Commission's failure to provide notice of and to hold a new public hearing after it expanded the reclassification from ten acres to ninety acres and its failure to resubmit the entire area for planning commission consideration were fatal to the board's jurisdiction. Westland West, 948 S.W.2d at 283; Cherokee Country Club, 152 S.W.3d at 475 (finding ordinance not enacted in compliance with statutory provisions invalid); Holdredge v. City of Cleveland, 402 S.W.2d 709, 712-13 (Tenn. 1966) (noting compliance with the statutory provision is mandatory); Haynes v. City of Pigeon Forge, 883 S.W.2d 619, 622 (Tenn. Ct. App. 1994) (failing to submit ordinance to planning commission renders it fatally defective); Town of Surgoinsville v. Sandidge, 866 S.W.2d 553, 557 (Tenn. Ct. App. 1993) (failing to comply with statutory notice requirements makes amendment to zoning ordinance void); State ex rel. Browning-Ferris Indus., 806 S.W.2d at 188 (finding amendments not submitted to planning commission are "null and void and of no effect"); Brumley v. Town of Greeneville, 274 S.W.2d 12, 15 (Tenn. Ct. App. 1954) (noting ordinance may be declared void when not passed according to law).

### D. "Presumption of Validity" v. "Void ab initio"/ Statute of Limitations

Because the zoning ordinance has been in effect over a long period of years, the Defendants argue that a presumption of validity should apply. Under the "presumption of validity" theory, an ordinance is deemed to have effect until invalidated by a court of competent jurisdiction. Nullification of the ordinance is prospective only. A basic rationale for the presumption of validity appears to be the avoidance of personal liability after good faith reliance upon a facially valid legislative enactment. See 1 J. Sutherland, Statutes and Statutory Construction § 2:7 (N. Singer 6th ed. 2000). By comparison, under the "void ab initio" doctrine, an invalid statute or ordinance is treated as though it never existed. O. Field, The Effect of an Unconstitutional Statute, 4-5 (1935); see Cumberland Capital Corp. v. Patty, 556 S.W.2d 516, 538 (Tenn. 1977).

The void ab initio doctrine possibly originated in the case of Marbury v. Madison, in which Chief Justice Marshall wrote that "a law repugnant to the constitution is void." 5 U.S. 137, 180 (1803). The case of Norton v. Shelby County, 118 U.S. 425 (1886), however, is considered "[t]he progenitor of the 'void ab initio' approach in American jurisprudence." Cumberland Capital, 556 S.W.2d at 538. As explained in Norton, our General Assembly reorganized the City of Memphis,

---

[1]See also Urbanowicz v. Planning & Zoning Comm'n of Town of Enfield, 865 A.2d 474, 487-88 (Conn. Ct. App. 2006) (zoning application amended during public hearing to include abutting land constitutes a new application requiring publication of notice of another public hearing); Stewart v. Planning Bd. of Twp. of Manalapan, 756 A.2d 1082, 1087 (N.J. Super. Ct. App. Div. 1999) (finding that informal review before the planning board violated due process).

transferring powers from a county court to a newly created board of commissioners; that legislation allowed the board to purchase bonds in a railroad company. 118 U.S. at 436. On appeal from the trial court, this Court declared the legislation unconstitutional and ruled that the board had no legal existence. See Id. at 439. After the grant of certiorari, the United States Supreme Court affirmed, holding that a subscriber who sought to collect a money obligation under the authority of the invalidated statute had no rights. The high Court held that "[a]n unconstitutional Act is not a law; it confers no rights; it imposes no duties; it affords no protection; it creates no office; it is, in legal contemplation, as inoperative as though it had never been passed." Id. at 442.

The void ab initio doctrine is still recognized as valid in other jurisdictions. For example, in Glen-Gery Corp. v. Zoning Hearing Bd. of Dover Twp., a case in which the plaintiff alleged violation of due process in the enactment of an ordinance, the Supreme Court of Pennsylvania held that the action was not barred by a statute of limitations because the procedural infirmities, if proven, would render the ordinance void ab initio. 907 A.2d 1033, 1035 (Pa. 2006). In Kole v. City of Chesapeake, 439 S.E.2d 405, 408-09 (Va. 1994), the high court of Virginia ruled that the limitations period "would not bar the Landowners' claims that the rezoning ordinance is void ab initio upon the several grounds alleged."[2]

Other state courts have concluded that the declaration of a statute or ordinance as void ab initio may cause injustice or inconvenience. See G. Gunther, Cases and Materials on Constitutional Law 34-36 (9th ed. 1975). Based upon considerations of public policy, other jurisdictions have refused to permit attacks upon long-standing zoning provisions and have declined to implement the void ab initio remedy. To illustrate, in Struyk v. Samuel Braen's Sons, a New Jersey court found

---

[2]See also Potomac Greens Assoc. P'ship v. City Council of City of Alexandria, 6 F.3d 173, 177 (4th Cir. 1993) (finding ordinance void ab initio for violation of statute); Carter v. City of Salina, 773 F.2d 251, 254-55 (10th Cir. 1985) (landowners not provided requisite notice awarded injunctive relief from void ordinance eight years after its enactment; "[o]rdinances which fail to comply with the state enabling statutes requiring notice and hearing are void . . . . Such procedural infirmities cannot be overlooked and the fact that such an ordinance has been 'on the books' and in effect for a long period of time does not instill life into an ordinance which was void at its inception."); Yost v. Fulton County, 348 S.E.2d 638, 640 (Ga. 1986) (finding the "amendment of a zoning ordinance accomplished pursuant to a defective notice is 'without any legal force or effect'"); Golden v. White, 316 S.E.2d 460, 461 (Ga. 1984) (plaintiff could challenge rezoning action taken thirteen years prior where evidence showed that ordinance was enacted without proper notice and hearing); Strickland v. Newton County, 258 S.E.2d 132, 133 (Ga. 1979) (the general rule that an unconstitutional statute is wholly void and of no force and effect from the day it was enacted is subject to exceptions where, because of the nature of the statute and its previous application, unjust results would accrue to those who justifiably relied upon it); Schadler v. Zoning Hearing Bd. of Weisenberg Twp., 850 A.2d 619, 626-27 (Pa. 2004) (failing to follow statutory notice requirements rendered ordinance void ab initio with no effective date, so statute of limitations did not begin to run); Pennington County v. Moore, 525 N.W.2d 257, 258-59 (S.D. 1994) (failing to follow statutorily imposed procedures in enacting ordinance made it invalid and unenforceable 23 years after enactment).

12

as follows:

> The ordinance has been in effect for ten years and "[p]ublic policy forbids an attack based upon informalities and irregularities in the procedure which led to the adoption of the ordinance, when it has been accepted as a valid enactment for a long period of time, and property owners affected by it have conformed to its provisions, and have fixed their status accordingly."

85 A.2d 279, 282-83 (N.J. Super. Ct. App. Div. 1951) (quoting W. Essex Bldg. & Loan Ass'n v. Borough of Caldwell, 171 A. 671, 672 (N.J. Super. Ct. App. Div. 1934)). The Michigan Court of Appeals in Northville Area Non-Profit Housing Corp. v. City of Walled Lake, adopted a similar posture:

> In the orderly process of handling real estate transactions where they are affected by provisions of zoning ordinances and amendments, it is essential that the members of the general public and the people buying or selling real estate must be able to rely on the validity of the public record, to-wit: a zoning ordinance and the zoning map issued in accordance with such zoning ordinance, without the necessity of poring over musty files and searching newspaper morgues, going back years in order to avoid a claim by other persons that there was a failure to comply with some technical requirement of the law in the adoption of the ordinance in question. To hold otherwise would bring about chaotic conditions beyond all comprehension in the transfer and usage of real estate in any community having a zoning ordinance affecting such land.

204 N.W.2d 274, 280 (Mich. Ct. App. 1972).

Nevertheless, Tennessee cases have long recognized the doctrine of void ab initio. In re Boyd, 189 F. Supp. 113, 116 (M.D. Tenn. 1959) (citing general rule); State ex rel. Barker v. Harmon, 882 S.W.2d 352, 356-57 (Tenn. 1994) (applying holding in Franks v. State, 772 S.W.2d 428, 431 (Tenn. 1989)); Planned Parenthood Ass'n of Nashville, Inc. v. McWherter, 817 S.W.2d 13, 15-16 (Tenn. 1991) (discussing general rule); Franks v. State, 772 S.W.2d at 431 (citing general rule but then finding it was appropriate "to apply the principle that the unconstitutional act was voidable until condemned by judicial pronouncement"); State v. Driver, 598 S.W.2d 774, 776 (Tenn. 1980) (void ab initio from date of enactment); Leech v. Am. Booksellers Ass'n, Inc., 582 S.W.2d 738, 755 (Tenn. 1979) (finding Obscenity Act of 1978 void and of no force and effect); Capri Adult Cinema v. State, 537 S.W.2d 896, 900 (Tenn. 1976) (discussing general rule); State v. Dixon, 530 S.W.2d 73, 74 (Tenn. 1975) ("[A]n unconstitutional Act . . . was void from the date of its enactment"); State v. Collins, 528 S.W.2d 814, 818 (Tenn. 1975) (applying the rule that "an unconstitutional statute is not a law, does not confer any rights and is void ab initio"); Bd. of Educ. of Memphis City Schs. v. Shelby County, 339 S.W.2d 569, 584 (Tenn. 1960) ("[E]xistence of unconstitutional legislation, for any length of time, even after parties have accepted the same and had rights determined thereunder by the courts, cannot clothe such invalid laws with the mantle of validity."); O'Brien v. Rutherford

13

County, 288 S.W.2d 708, 710 (Tenn. 1956) (citing general rule); State v. Hobbs, 250 S.W.2d 549, 553 (Tenn. 1952) (citing general rule); Henry County v. Standard Oil Co., 71 S.W.2d 683, 684 (Tenn. 1934) (citing general rule); Roberts v. Roane County, 23 S.W.2d 239, 243 (Tenn. 1929) (citing general rule); Faust v. Metro. Gov't of Nashville & Davidson County, 206 S.W.3d 475, 493 (Tenn. Ct. App. 2006) (board had no authority to take actions in violation of Metro Code and actions were void ab initio); In re Int'l Fid. Ins. Co., 989 S.W.2d 726, 729 (Tenn. Crim. App. 1998) (to the extent that a local rule or order conflicts with substantive law, it is null and void ab initio); Gay v. City of Somerville, 878 S.W.2d 124, 126 (Tenn. Ct. App. 1994) (recognizing general rule); General Portland Inc. v. Chattanooga-Hamilton County Air Pollution Control Bd., 560 S.W.2d 910, 913 (Tenn. Ct. App. 1976) (board without authority to act and action declared null and void ab initio). In summary, these cases demonstrate that the doctrine is alive and well in this state.

In the zoning context, however, our Court of Appeals has carved out an exception to the general rule of application. "'[A]fter long . . . acquiescence in the substance of an ordinance, public policy does not permit such an attack on the validity of the ordinance because of procedural irregularities.'" Hutcherson, 11 S.W.3d at 134 (quoting Trainor v. City of Wheat Ridge, 697 P.2d 37, 39 (Colo. Ct. App. 1984) (citing Edel v. Filer Twp., 211 N.W.2d 547 (Mich. Ct. App. 1973)). In Hutcherson, the evidence established that there was extensive public reliance that immunized the ordinance "from a belated attack on various procedural grounds." 11 S.W.3d at 135.

Additional support for the exception is found in Metro. Gov't of Nashville & Davidson County v. Hudson, 148 S.W.3d 907 (Tenn. Ct. App. 2003), a case in which the Court of Appeals, following Hutcherson, precluded a homeowner's challenge to the zoning commission's failure to comply with procedural notice requirements enumerated in the metropolitan code. Even though the notices by newspaper and mail were inadequate, the court ruled that a delay of more than ten years barred relief and declined to declare the reclassification as void ab initio. Id. at 911.

The modern trend is to find that the void ab initio approach fails when there has been reliance on an ordinance that has given rise to vested rights. See 1 J. Sutherland, Statutes and Statutory Construction § 2.07 (C. Sands 4th ed. 1985); Note, State v. Douglas: Judicial "Revival" of an Unconstitutional Statute, 34 La. L. Rev. 851, 852-53 (1974). In Chicot County Drainage Dist. v. Baxter State Bank, 308 U.S. 371 (1940), the United States Supreme Court questioned its prior holding in Norton, observing that a retreat from the general rule of void ab initio was sometimes essential for an equitable result:

> The actual existence of a statute, prior to [a determination of unconstitutionality], is an operative fact and may have consequences which cannot justly be ignored. The past cannot always be erased by a new judicial declaration. The effect of the subsequent ruling as to invalidity may have to be considered in various aspects, - with respect to particular relations . . . and particular conduct . . . . Questions of rights claimed to have become vested, of status, of prior determinations deemed to have finality and acted upon accordingly, of public policy in the light of the nature both of the statute and its previous application, demand examination. These

14

questions are among the most difficult of those which have engaged the attention of courts, state and federal, and it is manifest from numerous decisions that an all-inclusive statement of a principle of absolute retroactive invalidity cannot be justified.

Id. at 374. Over thirty years ago, in Lemon v. Kurtzman, 411 U.S. 192 (1973), the United States Supreme Court all but overruled Norton: "However appealing the logic of Norton may have been in the abstract, its abandonment reflected our recognition that statutory or even judge-made rules of law are hard facts on which people must rely in making decisions and in shaping their conduct." Id. at 199.

In Cumberland Capital, decided shortly after Lemon, this Court declared the Industrial Loan and Thrift Act unconstitutional and announced a new rule regarding the calculation of interest rates. 556 S.W.2d at 534. The discussion of the void ab initio doctrine occurred in the limited context of the prospective versus retroactive application of the declaration of unconstitutionality. This Court, "motivated by our concept of fundamental fairness," outlined the controlling considerations to utilize in the retrospective versus prospective context: (1) the history of the enactment and its purpose and effect; (2) whether retrospective operation furthers its operation; (3) whether retrospective operation produces inequitable results; (4) whether there has been reliance on the enactment; (5) whether a declaration of unconstitutionality was foreseeable; and (6) the effect on the administration of justice. 556 S.W.2d at 541 (citations omitted). In Cumberland Capital, this Court ruled that the "presumption of validity" may often be "the better, more equitable and more realistic rule," id. at 540, particularly in the event of detrimental reliance and inequitable results, but the Court also recognized that the void ab initio doctrine "continues to have at least limited validity in Tennessee," id. at 539.

We note that our sister state of Kentucky, recognizing the potential harm in the application of the void ab initio doctrine, has mitigated the requirement of procedural compliance by statute:

[N]o . . . zoning regulation . . . shall be invalidated in its entirety for failure to strictly comply with any procedural provision of this chapter or . . . in making any publication required to be made under this chapter, unless a court finds that the failure to strictly comply . . . results in material prejudice to the substantive rights of an adversely affected person and that such rights cannot be adequately secured by any remedy other than invalidating the . . . zoning regulation . . . in its entirety.

Ky. Rev. Stat. Ann. § 100.182 (2005).

As indicated, this case is before this Court as a result of the chancellor's grant of the Defendants' Rule 12.02(6) motions to dismiss for the failure by the Plaintiffs to state a claim for relief. The allegations of the complaint must be accepted as true. Before we can resolve the statute of limitations issues raised in the Rule 12.02(6) motions, our first responsibility is to determine the validity of the 1992 resolution by the Rutherford County Board of Commission. The two issues are

inextricable.

In the matter before us, it is undisputed that the Jacksons dedicated only ten acres to their shooting range until 1999. Although the facts available are limited, it appears that there was a general lack of awareness that the ordinance addressed ninety acres rather than ten until Loveless sought to expand the operation. There was no presentation of proof by either side. This record, therefore, does not establish the requisite public or private reliance for an exception to the application of the void ab initio doctrine. There has been no indication of either longstanding acquiescence or extensive public reliance on the ordinance at issue. In order to invoke the exception to the doctrine, equitable principles must favor the party relying upon the validity of the ordinance. That reliance must be apparent and the expense must be significant. The circumstances must justify the "exercise of . . . equitable powers to ameliorate the doctrine's sometimes harsh results." Perlstein v. Wolk, 844 N.E.2d 923, 933 (Ill. 2006); See also Ziegler, § 65:29. In consequence, no public policy considerations are involved that would immunize the ordinance from attack.

Because the altered amendment was substantial and was not returned to the planning commission for further consideration, the Rutherford County Board of Commission had no jurisdiction to rezone ninety acres when the public notice described ten. Under these circumstances, the general rule must apply. Because the ordinance is void ab initio, a statute of limitations is no defense.

## IV. Conclusion

The judgment of the Court of Appeals, which reversed the ruling of the chancery court, is affirmed. We specifically concur with this assessment:

> While it would appear from the record made in this case that the void character of the November 9, 1992, Zoning Resolution cannot be successfully challenged under any facts that can be developed upon remand, such a determination at this time . . . would be improper.

The case is, therefore, remanded for further proceedings consistent with this opinion. Costs of appeal are assessed against Rutherford County, and its surety, for which execution may issue if necessary.

_____
GARY R. WADE, JUSTICE

16